**UNITED STATES of America Plaintiff–Appellee,**

v.

**James C. MORRIS, Defendant– Appellant.**

No. 99–3905.

United States Court of Appeals, Sixth Circuit.

Jan. 23, 2001.

Before KENNEDY, ALAN E. NORRIS, and COLE, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Defendant James Morris pleaded guilty to one count of tax evasion, 26 U.S.C. § 7201, and one count of attempting to interfere with the administration of the internal revenue laws, 26 U.S.C. § 7212(a). In this appeal, defendant takes issue with two sentencing decisions made by the district court. First, he argues that he should not have received a two-level enhancement for committing his offense by "sophisticated means," U.S.S.G. § 2T1.1(b)(2). Second, he believes that he should have received an additional one-level reduction to his base offense for acceptance of responsibility, U.S.S.G. § 3E1.1(b).

After review of the briefs and record, we detect no error in the sentencing decisions made by the district court and therefore affirm its judgment.

## I.

On August 5, 1998, defendant was charged in a superseding indictment with four tax-related counts. He entered into a guilty plea on October 30. The district court sentenced defendant to 24 months of imprisonment, three years of supervised release, imposed a fine of $5,000, and ordered restitution in the amount of $41,686.

Since the underlying facts are fundamentally undisputed, we will rely upon the "Offense Conduct" section of defendant's revised pre-sentence report to set the context of our subsequent analysis:

This prosecution is the result of an investigation by the Internal Revenue Service Criminal Investigation Division (IRS–CID). This case originated from an undercover project (investigation) of the Pilot Connection Society (TPCS), a national tax protest organization. Morris was not overtly contacted during the course of this investigation: however, an IRS undercover agent did make several covert contacts with Morris. Investigation disclosed that James C. Morris willfully evaded his federal income tax liability by failing to file federal income tax returns in 1991 and 1992. In furtherance of this crime, Morris utilized nominee bank accounts, nominee trusts for his assets and received income from selling certificates of deposit, which were later identified as being fraudulent, a specified unlawful activity. In addition, Morris conspired with numerous unnamed individuals to defraud the United States Government by impairing and impeding the lawful functions of the Internal Revenue Service by selling and manufacturing "sham" trusts for his clientele in an attempt to conceal assets from the IRS.

When computing the offense level, the probation officer recommended that the district court impose a two-level increase based upon the means employed in the crime:

Pursuant to U.S.S.G. § 2T1.1(b)(2), if sophisticated means was [sic] used, increase by two levels. In this case, there were numerous trusts either used by Mr. Morris or sold by Mr. Morris in his trust packages and in the untaxing packages. The existence of these trusts and untaxing packages made it very difficult for the Internal Revenue Service to adequately determine the appropriate tax that was owed. This officer asserts the steps taken to create these trusts were more sophisticated than the typical means of evading taxes....

At the sentencing hearing, the district court adopted this recommendation based on the following rationale:

And the bottom line on sophisticated means is that that objection is overruled. Mr. Morris did employ a sophisticated means to avoid taxes. Review of the case law indicates to me that any additional activity beyond merely failing to file or refusing to file income tax returns constitutes a sophisticated means.

. . . .

. . . I think that Mr. Morris engaged in what would be considered sophisticated means to impede discovery of the existence of the offense of tax evasion, or the extent of the offense, by having his wages paid directly into a trust; by putting other assets in another trust . . . by reporting the income for the trust under a different employer identification number from the wages that he received, or his compensation. And I think that he qualifies for sophisticated means. It's more than just failure to file or supply information or pay tax, or the filing of fraudulent or false returns or statements or other documents. He went beyond that.

And he advocated going beyond that by filing a series of trusts in an attempt to defeat the government's attempts to investigate the extent of his own personal tax evasion, and he did that with other people as well. He advocated the filing of false liens: he advocated offshore accounts. I think the Application Note just doesn't happen to address this particular factual situation, but I would think that transactions through corporate shells or sham trusts would fit right in the same or similar entities or instrumentalities.

The pre-sentence report had recommended that defendant receive a three-level reduction for acceptance of responsibility. At sentencing, the district court accepted the government's argument that defendant deserved only a two-level reduction. The court explained its position:

The United States has asserted several objections, and in particular the United States objects to a one-level reduction in Mr. Morris' offense level pursuant to Section 3E1.1(b). The United States contends that Mr. Morris did not timely provide complete information to the United States concerning his own involvement in the offenses by identifying his untaxing and trust clients. That objection is sustained.

One of the two offenses to which Mr. Morris pleaded guilty is attempt to interfere with the administration of the Internal Revenue Service. He committed that offense in part through the sale of untaxing packages and sham trusts. In order to have provided complete information to the United States concerning his involvement in that offense, and to have been eligible for the additional reduction pursuant to 3E1.1(b), Mr. Morris would have had to divulge to the United States the names of the persons to whom he sold those packages and trusts. The United States could then have determined the full extent and consequences of Mr. Morris' activities. His conscious choice not to divulge the names of those persons, and his choice to withhold information from the United States concerning his involvement in that offense, results in his being denied the additional one level of reduction in offense level.

II.

*1. Sophisticated Means*

The guideline section at issue provides "[i]f sophisticated means were used to impede discovery of the existence or extent of the offense, increase by 2 levels." U.S.S.G. § 2T1.1(b)(2) (Nov.1997). Application Note 4 defines "sophisticated

means" as "conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case. An enhancement would be applied, for example, where the defendant used offshore bank accounts, or transactions through corporate shells or fictitious entities." U.S.S.G. § 2T1.1, comment. (n.4) (Nov. 1997).

This guideline section was revised by amendment effective November 1, 1998. The revised guideline section is not substantially different, but now reads. "If the offense involved sophisticated concealment, increase by 2 levels." U.S.S.G. § 2T1.1(b)(2) (Nov.1998). Likewise, Application Note 4 now provides:

> For purposes of subsection (b)(2), "sophisticated concealment" means especially complex or especially intricate offense conduct in which deliberate steps are taken to make the offense, or its extent, difficult to detect. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore bank accounts ordinarily indicates sophisticated concealment. U.S.S.G. § 2T1.1, comment. (n.4) (1998).

U.S.S.G. § 2T1.1 comment. (n.4) (Nov. 1998). According to Amendment 577, the changes were enacted in part to make clear that "application of this new enhancement for sophisticated concealment ... is based on the overall offense conduct for which the defendant is accountable." U.S.S.G.App. C.

■ Defendant was sentenced in July 1999. However, the pre-sentence report, district court, and the briefs to this court all refer to the earlier version of the guideline. Although a sentence should ordinarily be based on the Guidelines " 'that are in effect on the date the defendant is sentenced,' see 18 U.S.C. § 3553(a)(4)(A); U.S.S.G. § 1B1.11(a), an amendment that

occurs after the offense but before sentencing will not be applied when it would increase the sentence, because to do so would violate the Ex Post Facto Clause." *United States v. Moses*, 106 F.3d 1273, 1278 n. 5 (6th Cir.1997). While the current version of the guideline section applies to defendant, the changes are of no apparent significance in this case and the parties have looked to the older version in their briefs to this court. We will therefore do the same.

■ This court reviews the district court's determination concerning the applicability of this guideline section for clear error. *See United States v. Kraig*, 99 F.3d 1361, 1370 (6th Cir.1996); 18 U.S.C. § 3742(e). However, the application of the guideline to a particular set of facts is reviewed de novo. *See United States v. Pierce*, 17 F.3d 146, 151 (6th Cir.1994).

■ Defendant concedes that he used two nominee trusts to conceal his income and assets but argues that this activity represents a minimal amount of activity. We note, however, that the Seventh Circuit has found that the use of nominee trusts constitutes a sophisticated means to conceal tax evasion offenses. *See United States v. Minneman*, 143 F.3d 274, 283 (7th Cir.1998) ("Compared to simply not reporting income, the use of multiple corporate names ... and the placement of funds in a trust account both constitute complex efforts to hide income"). We agree with that interpretation and hold that defendant's financial structuring arrangements were more than sufficient to merit the two-level enhancement provided for by U.S.S.G. § 2T1.1(b)(2).

### 2. Acceptance of Responsibility

■ As mentioned earlier, the district court granted defendant a two-level decrease for acceptance of responsibility pur-

suant to U.S.S.G. § 3E1.1(a). At issue is the court's refusal to grant defendant an additional reduction of one level pursuant to U.S.S.G. § 3E1.1(b), which provides as follows:

> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
>
> (1) timely providing complete information to the government concerning his own involvement in the offense; or
>
> (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1(b).

Defendant contends that the plea agreement contemplated a possible three-level reduction if "the defendant timely provides complete information to the Government concerning his own involvement in the offense." He also observes that he entered his guilty plea three days before the scheduled trial date. In his view, "The record is completely void as to any proof that the government had to prepare for trial or that court resources were not allocated efficiently."

Our review is for clear error. *See United States v. Surratt,* 87 F.3d 814, 821 (6th Cir.1996). In this case, the government issued subpoenas to witnesses prior to the plea and therefore objected to a three-level reduction because the plea was not sufficiently timely. Rather than dispute that argument at the sentencing hearing, defense counsel contended that his client deserved a three-level reduction because he provided complete information respecting his involvement in the crime. The district court rejected that position, however, finding that defendant had not been fully candid about his activities.

In our view, the district court did not commit clear error when it found that defendant had been less than fully candid about his criminal activities. Furthermore, defendant's belated plea did cause the government to engage in some trial preparation. We therefore affirm the district court's refusal to grant defendant an additional one-level reduction in his offense level for acceptance of responsibility.

### III.

The judgment of the district court is affirmed.