**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dewain MOSES, Defendant–Appellant.**

**No. 95–6066.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 10, 1996.

Decided Feb. 13, 1997.

---

Kenneth R. Taylor, Asst. U.S. Attorney (argued and briefed), Lexington, KY, for Plaintiff–Appellee.

Andrew M. Stephens (argued and briefed), Lexington, KY, for Defendant–Appellant.

Before BOGGS, NORRIS, and GIBSON,* Circuit Judges.

* The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

BOGGS, Circuit Judge.

A criminal whose sentencing had been postponed because he was dangerously deranged finally faced sentencing. He had already been confined, as a committed patient, far longer than the normal guidelines range of twelve to eighteen months. A sentence in that range would mean his imminent freedom. To delay the apparent hazard of this man's liberty, the district judge instead sentenced him to ten years in prison, by means of an "upward departure" pursuant to USSG §§ 5K2.0 and 5K2.14. We are asked to determine whether that exercise of judgment was correct. We hold that it was not, because 18 U.S.C. § 4246 instead provided the proper assurance of public safety. Therefore, we vacate and remand.

## I

Dewain Moses suffers from chronic paranoid schizophrenia. We will respect his medical privacy as much as possible. It is enough to say that strange, violent fancies have inhabited him for years; he is preoccupied with weapons, has overtly threatened the killings of several people, and fantasized the slaughter of still more. In 1989, a Kentucky state court twice found him to be dangerous, and ordered his involuntary commitment to a state mental hospital.

After his release, Moses purchased and received two rifles from Bacon Creek Gun Shop, including a Chinese assault rifle. In filling out the required purchase forms, Moses falsely stated that he had never been committed to a mental institution. When this was discovered by federal authorities, he was indicted for making false statements in connection with the purchase of the firearms (two counts), and for receiving firearms after having been adjudicated as a mental defec-

tive or committed to a mental institution (two counts). *See* 18 U.S.C. § 922(a)(6) and (g); § 924(a)(1)(B) and (a)(2). He was found competent to stand trial, and a federal jury convicted him on all four counts in February 1991.

After Moses' conviction, the government moved for a hearing to determine his mental condition, pursuant to 18 U.S.C. § 4244. Subsection (d) of that section provides:

If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect and that he should, in lieu of being sentenced to imprisonment, be committed to a suitable facility for care or treatment, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for care or treatment in a suitable facility. Such a commitment constitutes a provisional sentence of imprisonment to the maximum term authorized by law for the offense for which the defendant was found guilty.

18 U.S.C. § 4244(d). After conducting such a hearing, the fairness and legality of which neither party now disputes, Judge Siler, then of the district court, committed Moses in keeping with this statute.[1]

Moses then began treatment at the Federal Correctional Institution at Butner, North Carolina ("FCI–Butner"). The authorities at FCI–Butner periodically submitted "Forensic Reports" to the district court regarding Moses' condition.

The psychiatrist responsible for Moses, Dr. Thomas Owens, treated him with various anti-psychotic medications without success. In 1993, Dr. Owens began administering a new drug, Clozaril. Moses cooperated with

---

1. *Moses was convicted of four counts. The maximum authorized sentence for making false statements in connection with the purchase of a firearm is five years; for receipt or possession of a firearm by someone who has been committed to a mental institution, ten years. Although the normal practice under the Guidelines is to impose concurrent sentences "except as required to achieve the total sentence," see* USSG § 5G1.2, *comment., it has been held that the phrase in § 4244(d) "the maximum term authorized by*

law" refers to the statutory maximum for the offense, not the maximum sentence allowed by the Sentencing Guidelines. *See United States v. Roberts,* 915 F.2d 889, 892 (4th Cir.1990). 18 U.S.C. § 3584(a) permits imposition of either concurrent or consecutive sentences. Therefore, Moses' maximum sentence authorized by law, and hence his provisional sentence, was thirty years (two terms of ten years and two terms of five years, running consecutively).

the treatment, which partly succeeded in controlling his delusions. In the words of Dr. Owens:

> [H]e still has residual delusional beliefs. Untreated, these delusions affect him to such a degree that he can't discern what's appropriate behavior. With treatment, with the medication, he can hold onto some of his beliefs, he can be somewhat confused about—about—he's not clear that some of these things are not true, but the difference is, he knows not to act on these—on these beliefs, these residual delusions. And that comes from his compliance and continued treatment with the medicine Clozaril.

18 U.S.C. § 4244(e) provides that "[w]hen the director of the facility in which the defendant is hospitalized ... determines that the defendant has recovered from his mental disease or defect to such an extent that he is no longer in need of custody for care or treatment in such a facility, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment."

In keeping with that statute, Moses' improvement on Clozaril led FCI–Butner to issue a "Certificate of Recovery and Request for Court to Proceed with Final Sentencing" on April 18, 1995. The certificate stated in part: "While not totally in remission, we find Mr. Moses has recovered from his mental disease or defect to such an extent that he is ready to be returned to Court for final sentencing...."

Dr. Owens, who authorized the certificate, realized that application of the Sentencing Guidelines to Moses' case could result in Moses' immediate release, because he had already served more time since conviction than the Guidelines term of twelve to eighteen months. Without some mechanism in place at the time of Moses' release to assure his continuation on Clozaril, Dr. Owens feared a lapse in the effective administration of the drug; if that happened, it would be "very likely that those intense delusional beliefs that he has, that I think do create risk of harm to others, would return." Dr. Owens did believe, however, that it was possible that a successful regimen could be established for Moses outside the federal prison system, either on an outpatient basis or in "an intermediate type of facility, a hospital, something like that, to help him make adjustments back to the community." Therefore, the certificate also stated:

> It is nonetheless our opinion that should Mr. Moses be released from confinement to the community, his release would create a substantial risk of bodily injury to another person or serious damage to property of another due to a mental disease. It is our recommendation that upon final sentencing, Mr. Moses be returned to the hospital at FCI–Butner. Prior to the end date of his sentence, proceedings should be initiated under the provisions of Title 18, United States Code, Section 4246, such that suitable arrangement for State custody and care can be arranged.

Section 4246 authorizes the director of a mental health facility in which a criminal is hospitalized and whose sentence is about to expire to certify to the clerk of the court of the district in which the prisoner is confined that the inmate's mental condition creates a substantial risk to the public. The district court must then order a hearing. If the Government proves by clear and convincing evidence that "the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another," the court is instructed to order the patient committed either until the appropriate official in the person's state of domicile or conviction agrees to assume responsibility for him, or until "the person's mental condition is such that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment" would no longer create the predicate risks. 18 U.S.C. § 4246(d). It was Dr. Owens's intention, prior to the expiration of Moses' criminal sentence, to develop a satisfactory conditional-release regimen under § 4246. As Dr. Owens testified, "I feel very comfortable about looking at a conditional release ... where it would be clear that if he weren't to take his medication ... it would be grounds to take him immediately back into custody."

## II

Upon receipt of a § 4244(e) certificate, a federal district court is obligated to proceed to final sentencing. Accordingly, a presentence investigation report was prepared, and the district court held a sentencing hearing, at which Moses was present, on July 28, 1995. At the hearing, the government first argued that the FCI–Butner § 4244 certificate was too self-contradictory to be valid— its premise was that Moses was no longer in need of custody for care and treatment, yet it urged his commitment for further care and treatment.[2] After hearing testimony from Dr. Owens that clarified his intent, the court disagreed. It held that the language in the certificate suggesting continued treatment was simply a "recommendation as to sentencing," and did not undermine the statutory certificate, or alter the court's duty to sentence Moses. ("[B]ased upon this certificate and the testimony of Doctor Owens, this Court has no choice but to sentence. It does so most reluctantly." *See* Sentencing Tr., J.A. at 198.) The government does not appeal this decision.

In computing the sentence, the court determined that normal application of the Sentencing Guidelines would result in a range of twelve to eighteen months. Neither party disputes this calculation. However, after hearing testimony from Moses that demonstrated the continuing vigor of his delusions, the court ruled that the danger Moses posed to the community warranted an upward departure to a sentence of 120 months "primarily on the basis of Section 5K 2.14, but alternatively on the ground of Section 5K 2.0 . . . . " The propriety of that upward departure is the sole issue before us on this appeal.

## III

We review decisions to depart from the sentencing guidelines for abuse of discretion; an error of law in the interpretation or application of the guidelines constitutes an abuse of discretion, and the abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions: *Koon v. United States,* — U.S. —, — – —, 116 S.Ct. 2035, 2046–48, 135 L.Ed.2d 392 (1996); *United States v. Valentine,* 100 F.3d 1209, 1210 (6th Cir.1996); *United States v. Barajas–Nunez,* 91 F.3d 826, 831 (6th Cir.1996). Consequently, our review of the district court's application of the guidelines is the equivalent of the traditional de novo review of questions of law.[3] With that standard in mind, we now turn to the district court's legal conclusions about the proper use of §§ 5K2.0 and 5K2.14.

As its primary basis for upward departure, the district court relied on USSG § 5K2.14, which states that "if national secu-

---

2. This apparent inconsistency is resolved by an examination of the differences between §§ 4244 and 4246. They differ both in their descriptions of the mental diseases or defects required to trigger the sections' respective provisions, and the purposes of those provisions. Section 4246 quite explicitly identifies dangerousness to other persons and their property as the characteristic of a mental disease necessary to justify continued commitment under that statute. The one purpose is to protect such persons and property. By contrast, the predicate for § 4244 is any "mental disease or defect for the treatment of which [the defendant] is in need of custody for care or treatment in a suitable facility." The Fifth Circuit has suggested three possible reasons for postponing sentencing under § 4244: "(1) protecting mentally ill prisoners who might be at substantial risk if placed in the general prison population; (2) ensuring the safety of other inmates; and (3) providing humanitarian treatment for mentally ill inmates." *United States v. Abou–Kassem,* 78 F.3d 161, 165 (5th Cir.1996). The statutory scheme thus takes account of situa-

tions in which none of these concerns continue to exist, and yet the convicted person may be thought to pose, if released, a danger to others or their property sufficient to justify commitment or conditional release under § 4246. Indeed, this case appears to present just such a situation. It has not been argued that Moses would be at substantial risk or pose a danger to other inmates if placed in the general prison population. In the period following conviction, he needed to be in a hospital for treatment; but it has now been determined that his treatment no longer necessitates hospitalization. Thus, it is not illogical that Moses's mental illness did not any longer forestall sentencing, but that it may militate against his unconditional release into society.

3. It is true that under 18 U.S.C. § 3742(e), the courts of appeals are to give due deference to the district court's application of the guidelines to the facts; this formula should inform the review of a question of law, but does not bar reversal of an erroneous legal conclusion.

rity, public health, or safety was significantly endangered, the Court may increase the sentence above the guideline range to reflect the nature and circumstances of the offense." That requires a court to look at the offense committed and the dangerousness of the defendant *at the time of the crime*, not the future dangerousness of the defendant. *See, e.g., United States v. Jennings,* 83 F.3d 145 (6th Cir.1996) (reviewing upward departure under § 5K2.14 for endangering human life while manufacturing a controlled substance); *United States v. McDowell,* 902 F.2d 451 (6th Cir.1990) (same, for creating a threat to public safety by running a crack house); *but see United States v. Joan,* 883 F.2d 491 (6th Cir.1989) (affirming § 5K2.14 upward departure for recidivist defendant whom judge found "would continue to pose a serious threat to the safety of whatever community he is in").

4. *See, e.g.,* J.A. at 124 ("[the Government] raises [the issue] that Mr. Moses' release would cause a danger to the community. . . . It is for that reason that the Court will consider an upward departure from the guidelines. I will consider an upward departure with regard to whether he is a danger to the community."); J.A. at 137 ("I would consider departing under [§ 5K2.0] in light of . . . of [Dr. Owens's] testimony today, that were Mr. Moses to be released today—and effectively that's what we would be talking about— that he would pose a danger to the community."); J.A. at 196–97 ("There is, as I said, an extraordinary danger based upon his psychiatric disorders. . . . [T]he court relies upon the testimony of his doctor today, that if he is released to the community he is a danger and that it is unlikely he will continue on his own to take his medication.").

5. We note that Moses committed his crimes in 1990, and was convicted in February 1991. The Presentence Investigation Report, which apparently was relied on by the district court, used the 1989 edition of the guidelines.

USSG § 5H1.3 was amended effective November 1, 1991, replacing the clause "except as provided in the general provisions in Chapter Five" with "except as provided in Chapter Five, Part K, Subpart 2 (Other Grounds for Departure)." In *United States v. Hines,* 26 F.3d 1469 (9th Cir.1994), the court, in applying the amended version, rejected the argument that § 5H1.3 ruled out the consideration of mental and emotional conditions while applying §§ 5K2.0 and 5K2.13, because those sections are found in Chapter Five, Part K, Subpart 2. *Id.* at 1477 n. 6.

The Presentence Investigation Report mentions § 5K2.14 as a possible reason for departure: "At the time of the instant offense, Moses had, at various times, possession of firearms and did pose a serious risk of danger to not only members of his family, but anyone whom Moses might have perceived as an enemy." But it is evident to us from the transcript that the district court, legitimately concerned about the prospects that Moses would discontinue Clozaril, was focusing on Moses' future dangerousness when it applied § 5K2.14.[4] That was legal error.

There is another reason for reaching the same conclusion. USSG § 5H1.3 states that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines. . . ."[5] First, we note that, in our view, the category of "mental and emotional conditions" in § 5H1.3 includes mental ill-

We read the carve-out in the 1991 amendment to § 5H1.3 differently. We do not think that it means that § 5H1.3 does not apply at all in the context of Chapter Five, Part K, Subpart 2, but only when grounds therein provide for it not to be applicable. Otherwise, the amended clause would have stated "except when applying those grounds for departure set forth in Chapter Five, Part K, Subpart 2."

We agree with the court in *Hines* that § 5K2.13 is one such provision, because it specifically provides for a downward departure for non-violent crimes committed "while suffering from significantly reduced mental capacity. . . ." But we disagree that the amendment to § 5H1.3 makes its exclusion from consideration of mental and emotional considerations irrelevant to §§ 5K2.0 and 5K2.14. *Accord United States v. Fonner,* 920 F.2d 1330, 1334 (7th Cir.1990) ("U.S.S.G. § 5H1.3 bans resort to mental health except as provided elsewhere, and the only proviso, § 5K2.13, allows downward (but not upward) departures for non-violent offenses.").

Even if we were to agree with *Hines* that § 5K2.13 as amended cannot apply to the other grounds of departure listed in Chapter Five, Part K, Subpart 2, we would be compelled to apply the as-yet unamended version, which contains no such restriction. Although ordinarily a sentence should be based on the guidelines "that are in effect on the date the defendant is sentenced," *see* 18 U.S.C. § 3553(a)(4)(A), USSG § 1B1.11(a), an amendment that occurs after the offense but before sentencing will not be applied where it would increase the sentence, because to do so would violate the Ex Post Facto Clause. *See United States v. Nagi,* 947 F.2d 211, 213 n. 1 (6th Cir.1991).

ness, and not merely such otherwise (if not for § 5H1.3) possibly aggravating or mitigating states as sadness, hostility, passion, or the like. *See, e.g., United States v. Fonner,* 920 F.2d 1330, 1334 (7th Cir.1990) ("Fonner needs mental care. . . . Mental health is not a solid basis on which to depart upward. U.S.S.G. § 5H1.3 bans resort to mental health. . . ."). The immediate question, then, is whether this case departs from the "ordinary" to such a degree as to consider Moses' mental illness relevant to a decision to depart under § 5K2.14. *Cf. United States v. Doering,* 909 F.2d 392, 394 (9th Cir.1990) (considering relationship of §§ 5H1.3 and 5K2.0). We think the answer is no. Section 5H1.3 by its terms must encompass a variety of mental illnesses, including many that might make a defendant dangerous to himself and others. Moses' paranoid schizophrenia made him dangerous at the time of his crime, but not in an uncommon way, or in a way so out of the ordinary (in the context of mentally ill criminals) as to override application of the rule.

For both these reasons, we believe the district court erred in using § 5K2.14 to depart from the guidelines range.

## IV

■ The district court relied "alternatively" on § 5K2.0 for the upward departure. It found in Moses' dangerous mental condition "the existence of an aggravating . . . circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that prescribed." USSG § 5K2.0.

The Ninth Circuit has rejected the proposition that a defendant's mental illness warrants an upward departure under § 5K2.0:

Thus, we are left to decide whether the need for psychiatric help constitutes the type of extraordinary instance where a defendant's mental and emotional condition is relevant to the sentencing determination. The answer to this question is plain-

ly no. 28 U.S.C. § 994(k), in outlining the duties of the Sentencing Commission, explicitly provides that "[t]he Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment." This language makes abundantly clear that the need for psychiatric treatment is not a circumstance which justifies departure. We, therefore, conclude that the district court erred by departing upward based upon Doering's need for psychiatric care.

*Doering,* 909 F.2d at 395. However, *Doering* also read the guidelines as leaving open the possibility that a defendant's mental or emotional condition could support a departure "in the extraordinary case." It reached this conclusion by parsing the language of § 5H1.3, which states that "[m]ental and emotional conditions are not *ordinarily* relevant in determining whether a sentence should be outside the guidelines . . ." (emphasis added). *Id.* at 394.

In *United States v. Hines,* 26 F.3d 1469, 1477 (9th Cir.1994), the Ninth Circuit upheld a § 5K2.0 departure for a defendant whom the district court found to pose "an extraordinary danger to the community because of his serious emotional and psychiatric disorders." The defendant had made numerous statements regarding his intention to kill President Bush and taken a number of overt steps toward that goal; he "once brought an ax into [a psychiatric] hospital, threatening patients and staff;" and wrote in his diary "explicit descriptions about sodomizing young children and killing one boy." *Id.* at 1472–73. In upholding the § 5K2.0 departure, the Ninth Circuit panel invoked the "extraordinary case" exception of *Doering. Id.* at 1477–78. *Hines* made clear that the reason for the upward departure was "not . . . Hines's need for psychiatric treatment," but the "extraordinary danger" he posed to the community. *Id.* at 1478.[6]

---

6. In a disposition from the bench pursuant to Sixth Circuit Local Rule 19, this court affirmed an upward departure for virtually identical rea-

sons. *See United States v. Castle,* No. 90–1484, 1990 WL 180311 (6th Cir.1990). There was evidence that the defendant, convicted of falsely

Here, the district court appeared to base its § 5K2.0 decision both on Moses' need for psychiatric treatment, and the future danger he posed to the public. To the extent that the district court based its § 5K2.0 departure on Moses' need for psychiatric treatment, we agree with the Ninth Circuit in *Doering* that "the need for psychiatric treatment is not a circumstance which justifies departure." 909 F.2d at 395. To the extent that the district court relied on Moses' dangerousness to the community, we do not think that this factor was one "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." The commission obviously considered the import of mental and emotional conditions when it adopted § 5H1.3.[7] As we explained above, we think that § 5H1.3 encompasses even those mental and emotional conditions that create a danger of violent behavior. That inclusiveness is limited by the word "ordinarily" in § 5H1.3, as the court in *Doering* recognized when it held that a defendant's mental or emotional condition could support a departure "in the extraordinary case." 909 F.2d at 394. As we concluded above, in the context of mentally ill criminals, we do not believe that Moses' dangerousness makes this is an "extraordinary case." As noted, we do not question the district court's factual findings that Moses was dangerous, but only how those findings should be applied within the framework of the guidelines.

More fundamentally, we cannot agree with *Hines* that a convicted person's mental illness creates "an extraordinary danger to the community" justifying an upward departure when there exists a statute, 18 U.S.C. § 4246, directly designed to forestall such danger through continued commitment after completion of the sentence.[8] Otherwise, virtually every criminal defendant who, at the time of sentencing, met the dangerousness criteria of § 4246 would also be subject to an upward departure. As is clear from his testimony, Dr. Owens explicitly contemplated that § 4246 would be used to assess Moses' condition, and, if he were proved dangerous under the statute, to prevent his release except under an acceptably risk-minimizing program. If Moses' psychiatrist believes that this continues to be warranted, the director of FCI–Butner should, prior to Moses' re-sentencing on remand, "transmit [a] certificate to the clerk of the court for the district in which [Moses] is confined." § 4246(a). Filing such a certificate will stay Moses' release pending completion of the § 4246 proceedings. *Ibid.* If the government can demonstrate at a hearing the statutorily-defined dangers by clear and convincing evidence, Moses will remain subject to confinement or conditional release under the provisions of § 4246.[9] It should be noted that the responsibility for filing a certificate under § 4246(a) lies with the director of the facility in which the convicted person is hospitalized, and that it is not within the statutory authority either of the Government or of the district court to initiate § 4246 proceedings. *See Weber v. United States Dist. Court for the Cent. Dist. of Cal.,* 9 F.3d 76, 78–79 (9th Cir.1993) (writ of mandamus ordering

stating in connection with the purchase of a firearm that he had never been adjudged a mental defective, had made threats against the President and other public officials, at times showing up outside the White House or in their offices. The district court departed upward to the statutory maximum on the grounds that the mental illness of the defendant made him a threat to the safety of the community. Sentencing Proceeding, April 16, 1990, JA (of *Castle* ) at 68.

7. As we explained *supra* note 5, we do not believe that the 1991 amendment to § 5H1.3 means that it is inapplicable to all of the "other grounds for departure" listed in Chapter Five, Part K, Subpart 2 (in which § 5K2.0 is found), but only to those grounds that specifically provide for consideration of mental and emotional conditions.

8. In addition, USSG § 5B1.4(b)(24) states that if a court "has reason to believe that the defendant is in need of psychological or psychiatric treatment, it is recommended that the court impose a condition [of probation or supervised release] requiring that the defendant participate in a mental health program approved by the United States Probation Office."

9. The government expressed concern that funds and facilities with which to carry out an appropriate supervisory regimen might not exist outside FCI–Butner. If that is true, the precondition for Moses' release under § 4246 would not exist either, and in FCI–Butner he would stay.

release of hospitalized individual was appropriate where guidelines sentence had already expired and where district court initiated § 4246 hearing sua sponte).

## V

In short, we hold that under the relevant statutes and guidelines, the appropriate mechanism of public protection is a commitment proceeding under § 4246, rather than an extended criminal sentence. For the reasons discussed herein, we conclude that the district court's upward departures on the grounds of §§ 5K2.14 and 5K2.0 were in error. Accordingly, we VACATE and REMAND for a new sentencing proceeding.