**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0173n.06

**No. 10-5688**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Feb 13, 2012***

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR THE |
| | ) EASTERN DISTRICT OF TENNESSEE |
| JOHN R. TOLBERT, JR., | ) |
| | ) |
| Defendant-Appellant. | ) |

Before: MARTIN and GIBBONS, Circuit Judges, and STEEH, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** After a jury trial, defendant-appellant John Tolbert, Jr. was sentenced to fifty-four months' imprisonment for possessing a 12-gauge short-barreled shotgun that was not registered to him in the National Firearms Registration and Transfer Record. On appeal, Tolbert argues that the district court judge improperly failed to recuse himself from sentencing Tolbert after witnessing an incident in which Tolbert assaulted a Deputy United States Marshal, that the district court committed clear error when it found that Tolbert was a member of a street gang, and that the sentence imposed was unreasonable because the district court failed to adequately take Tolbert's mental health issues into account and because the district court possibly

---

[*]The Honorable George C. Steeh III, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

imposed the sentence based on Tolbert's rehabilitative needs. For the reasons that follow, we affirm the sentence imposed by the district court.

I.

On February 4, 2009, Tolbert approached Miguel Pascual-Bartolome outside his Knoxville, Tennessee residence, put a gun to his chest, and demanded that he turn over everything he had in his pockets. A short while later, Tolbert also attempted to gain entry into the residence of Felipe Hernandez, who called 911. Officer William Muhlfeld arrived at the scene in response to the 911 call, and when he attempted to stop Tolbert, Tolbert fled. During the chase, Officer Muhlfeld observed Tolbert remove a weapon from his waistband, which the officer identified as a sawed-off shotgun with a wooden handle grip. A loaded, sawed-off shotgun was recovered by the police a short while later in an abandoned house where Officer Muhlfeld had lost sight of Tolbert.

On April 22, 2009, a federal grand jury charged Tolbert with possessing a 12-gauge short-barreled shotgun that was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. On October 21, 2009, a jury found Tolbert guilty. After the jury had delivered its verdict and exited, when told by a Deputy United States Marshal to place his hands behind his back to be handcuffed, Tolbert instead grabbed a water pitcher off counsel's table and struck the Deputy Marshal in the head with it. United States District Judge Thomas Phillips, who had presided over the trial, was on the bench in the courtroom during the altercation. He heard the commotion but did not see Tolbert actually strike the Deputy Marshal with the water pitcher. As Tolbert was being led out of the courtroom, he yelled threats against the

2

judge and others, but Judge Phillips did not feel that there was any imminent threat against him and did not feel it necessary to implement any additional security measures.

Tolbert filed a motion pursuant to 28 U.S.C. § 455(a) to disqualify Judge Phillips from presiding over his sentencing hearing. He argued that the assault of the Deputy Marshal occurred in front of Judge Phillips, that Judge Phillips heard his subsequent threats, and that as a result, Judge Phillips could no longer maintain an appearance of impartiality. The district court denied Tolbert's motion to disqualify prior to the hearing as well as his renewed request to disqualify, made at the sentencing hearing itself.

Before sentencing, the probation officer calculated the base offense level for a violation of 26 U.S.C. § 5841 as eighteen. A four-level enhancement was added because the defendant used or possessed the firearm in connection with another felony offense—the armed robbery of Pascual-Bartolome—resulting in an adjusted offense level of twenty-two. The defendant had a criminal history score of four, placing him in a criminal history category of III. The resulting advisory Sentencing Guidelines range was fifty-one to sixty-three months' imprisonment.

Tolbert was classified as a member of the "Rollin' 60's" Crip Street Gang in paragraph five of the presentence investigation report ("PSR"). He objected to this classification, arguing that it was not accurate and he was not aware of any facts that would support such a conclusion. In response, the probation officer stated that the information about the defendant's gang affiliation was obtained from the Knox County Justice Information Management System, and information entered into this database is subjected to an extensive validation process that ensures its accuracy.

Tolbert also filed a motion for a downward departure and a variance prior to sentencing. He requested a downward departure or variance because of his extensive mental health issues, including a lack of impulse control, and because of his age and immaturity at the time of his offense. The government opposed the motion and argued that the serious danger that he posed to the public justified a sentence toward the upper end of the Guidelines range.

During the sentencing hearing, the court heard testimony from Knoxville Police Officer Jim Quick regarding Tolbert's classification as a gang member. Quick, who had been qualified as an expert in gang classification in other cases, explained that Tolbert was classified by using a ten-point scale system in which gang identifiers and criminal activity were assigned certain point values. When an individual was assigned ten or more points, that person was classified as a gang member. Tolbert had been assigned twenty-two points based on gang-related graffiti found in his jail cell (2 points), associating with known gang members (point value not stated - presumably 8 points), weapons arrests (6 points), and violent crime arrests (6 points) and was classified as a gang member on this basis. Defense counsel cross-examined Quick about the reliability of the classification system, and Quick conceded that points are assigned for weapons arrests and violent crime arrests, regardless of the outcome of the arrests, and that the form used to tabulate Tolbert's score did not detail who his known gang associates were. Quick testified that the information supporting the conclusion that Tolbert associated with known gang members was located in other databases, but this information was not reflected on the form itself. After hearing Officer Quick's testimony, the district court found by a preponderance of the evidence that Tolbert was or is a member of the Rollin' Sixties Crip Street Gang. The district court did not ask for any argument from the parties

4

before making this ruling, nor did defense counsel request the opportunity to present argument on this issue. Defense counsel did not object on this issue following the ruling.

The district court then heard testimony from Dr. Kathryn Smith, who had met with Tolbert on two occasions and reviewed his mental health records. She testified about Tolbert's mental health issues and his extensive mental health history. Smith concluded that, without proper medication, Tolbert posed a danger to himself and others.

The district court ultimately rejected Tolbert's request for a downward variance, reasoning that while it is true that he "suffers from depression, bipolar disorder, and other conditions that may make him more likely to act irrational [*sic*], [that] is not enough to justify a variance, especially when Defendant presents an extreme danger to society." The court noted that Tolbert's actions had become increasingly violent over the years and held that the need to protect society outweighed the mitigating factor of Tolbert's reduced culpability because of his mental health issues. It found that nothing in Tolbert's history suggested that he would act more peacefully or responsibly as he got older; instead, it suggested the opposite—that "he has become increasingly more violent and out of control over the years."

It then imposed a sentence of fifty-four months' imprisonment, a sentence which was in the middle of the Guidelines range. The court explained that Tolbert's history demonstrated that he was "both out of control and dangerous" and that the sentence was "necessary to protect the public and deter Defendant from committing future crimes." The court also found that the sentence provided Tolbert with an opportunity for mental health treatment and recommended that he be placed in the

mental health facility in Butner, North Carolina, which, in the court's opinion, had the best reputation for providing mental heath care.

When asked for objections to the sentence, defense counsel responded, "we would make an objection pursuant to [*United States v.*] *Bostic*[, 371 F.3d 865 (6th Cir. 2004.)], that the denial of the variance . . . [is] substantively and procedurally unreasonable."

## II.

Tolbert first argues that a reasonable person might question the impartiality of the presiding judge in his sentencing hearing because the judge witnessed Tolbert's assault on a deputy marshal and Tolbert verbally threatened the judge. Tolbert filed a written motion to disqualify pursuant to 28 U.S.C. § 455(a), which provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," which the district court denied. This court reviews the denial of a recusal motion for an abuse of discretion. *In re Triple S Restaurants, Inc.*, 422 F.3d 405, 417 (6th Cir. 2005) (citation omitted); *United States v. Howard*, 218 F.3d 556, 566 (6th Cir. 2000) (citation omitted).

A judge must recuse himself "if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990) (citations and internal quotation marks omitted). The standard is an objective one, and a judge "need not recuse himself based on the subjective view of a party[,] no matter how strongly that view is held." *Id.* (citation and internal quotation marks omitted). When a party cannot show partiality stemming from an extra-judicial source or personal bias, recusal is only necessary in rare circumstances. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

"[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Moreover,

> [t]he judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards [a party], who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings . . . .

*Id.* at 550–51.

Tolbert's assault on the Deputy Marshal occurred after the jury had been released and after Judge Phillips had adjourned court. Judge Phillips was gathering paperwork from the bench when he heard the commotion and looked up, witnessing only the aftermath of the assault. As he was being led out of the courtroom, Tolbert also directed threats towards the judge and others present. Although these events technically occurred outside of a formal judicial proceeding, since court had been adjourned, they did occur immediately following a judicial proceeding, inside the courtroom, while the judge was still present. Because of their temporal and spacial proximity to Tolbert's trial, these events do not constitute an extra-judicial source of bias or partiality. Furthermore, "judicial activity" extends beyond conduct that occurs within the confines of formal judicial proceedings, such as hearings and trials. *See e.g.*, *Reed v. Rhodes*, 179 F.3d 453, 469 (6th Cir. 1999) (holding that a judge's *ex parte* communications with parties, which occurred outside any formal judicial proceeding, still arose in a "judicial context" and was not extra-judicial conduct). Accordingly, because Tolbert has not established that his actions created an extra-judicial source of partiality or

7

that his conduct resulted in a judicial display of "deep-seated . . . antagonism that would make fair judgment impossible," *Liteky*, 510 U.S. at 555, Tolbert has not shown that recusal was necessary or that the district court abused its discretion in denying his motion.

III.

Next, Tolbert contests the district court's finding that he was a member of a street gang. His classification as a gang member is a factual finding, which is reviewed for clear error. *See United States v. Webb*, 616 F.3d 605, 609 (6th Cir. 2010) ("[A] factual finding is reviewed for clear error."). "A finding is clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation marks omitted).

Tolbert first argues that the district court violated Federal Rule of Criminal Procedure 32(i)(1)(C) when it did not allow either party to comment on the probation officer's determination in the presentence investigation report that Tolbert was a member of a street gang. Rule 32(i)(1)(C) provides that at sentencing the district court "must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." Fed. R. Crim. P. 32(i)(1)(C). Tolbert argues that the district court should have followed this rule and "court tradition" by soliciting argument from the parties before ruling on Tolbert's objection to his classification as a gang member. He cites no case law, however, in support of his claim that following testimony on the issue, Rule 32(i)(1)(C) requires an affirmative solicitation of argument from the parties before the court may rule on an objection to the PSR. Furthermore, Tolbert's attorney did have an opportunity "to comment on the probation officer's determinations." In

addition to the previously submitted written objections to the PSR, Tolbert's attorney had several opportunities during the sentencing hearing to present additional argument on his objection, including at the close of Officer Quick's testimony and during the period designated for comments from the parties before the sentence was determined. The fact that he failed to recognize or utilize these opportunities does not mean that the district court violated Rule 32(i)(1)(C).

Tolbert further argues that the evidence presented regarding his alleged gang affiliation did not have sufficient minimal indicia of reliability, and thus, the district court's finding that he was a gang member, which relied on this evidence, was clearly erroneous. Assuming *arguendo* that Tolbert did not forfeit this argument by failing to raise it at his sentencing hearing, *see In re Hood*, 319 F.3d 755, 760 (6th Cir. 2003) ("It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.") (citations and internal quotation marks omitted), we review the district court's finding for clear error. Although Tolbert raises some non-frivolous concerns about the reliability of the gang member classification system—at least to the extent of how this system was presented during the sentencing hearing—it is not enough to leave us with a "definite and firm conviction that a mistake has been committed." *Webb*, 616 F.3d at 609.

Tolbert argues that there is no way to test the reliability of the information, such as his alleged affiliation with known gang members, for which he was awarded points that led to his classification as a gang member. Tolbert fails to acknowledge, however, the probation officer's response to his objection to the PSR, which stated that the information about the defendant's gang affiliation was obtained from the Knox County Justice Information Management System and that

9

information entered into this database is subjected to an extensive validation process that ensures its accuracy. Also, while the supplemental testimony of Officer Quick at the sentencing hearing might not have established the reliability of the ten-point scale system beyond all possible challenge, Quick testified that this classification system has been tested in federal and state court, has been determined to be accurate, and had been in use since 1994. Quick also testified that Tolbert had received a score of twenty-two points, which is well above the ten-point threshold necessary to be classified a gang member under this system. Based on this testimony and the probation officer's response to the objection to the PSR, it was reasonable for the district court to find by a preponderance of the evidence that Tolbert was a member of a street gang. This finding was not clearly erroneous.

IV.

Finally, Tolbert asserts that his sentence was unreasonable. This court reviews the district court's sentencing determination for both procedural and substantive reasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007). A district court commits reversible procedural error, for instance, by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id*. In this case, the district court properly calculated the Guidelines range, did not treat the Guidelines as mandatory, reviewed the Section 3553(a) factors, did not rely on any clearly erroneous facts in selecting the sentence, and adequately

explained the sentence chosen, which was within the Guidelines range. Thus, the sentence imposed was procedurally reasonable.

Next, this court considers whether the district court abused its discretion in selecting the length of the sentence. When a sentence falls within the Guidelines range, as here, a presumption of reasonableness applies. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (*en banc*). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51. A sentence may be substantively unreasonable if, for example, it is selected arbitrarily, based on impermissible factors, fails to consider pertinent Section 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor. *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005).

Tolbert argues that his mental illness and violent propensities are so inseparably intertwined that when the district court justified its denial of his motion for a downward variance based on the need to protect the public, this was actually a decision to impose a greater sentence because of his mental health issues. Tolbert cites *United States v. Moses*, 106 F.3d 1273 (6th Cir. 1997), for the proposition that the appropriate remedy to address the potential danger he posed to the public was hospitalization pursuant to 18 U.S.C. § 4246, which provides for "hospitalization of a person due for release [from custody] but suffering from mental disease or defect." The district court in *Moses* relied on U.S.S.G. § 5K2.14, which permits a district court to increase a sentence above the Guidelines range if public safety is significantly endangered, to justify an upward departure to a sentence of 120 months' incarceration when the defendant would otherwise have been released. 106 F.3d at 1277–78. The public safety concern in *Moses* stemmed from the defendant's need for

11

psychiatric treatment. *Id.* at 1280. On appeal, the *Moses* court held that an upward departure under § 5K2.14 was improper under these circumstances, and the proper remedy to forestall any potential danger the defendant posed to the community was continued commitment pursuant to18 U.S.C. § 4246. *Id.* at 1277-81. Tolbert, however, was not sentenced subject to an upward departure, nor was he otherwise eligible to be released like the defendant in *Moses*, which makes *Moses* inapplicable to the present case.

Furthermore, the premise that Tolbert's mental illness and his propensity for violence are inextricably intertwined, while perhaps true as a matter of human psychology, is not a governing principle for a district court judge tasked with determining an appropriate sentence. In denying the motion for a downward variance, the district court found, "[i]t is true the Defendant suffers from depression, bipolar disorder, and other conditions that may make him more likely to act irrational [*sic*], but that within itself is not enough to justify a variance, especially when Defendant poses an extreme danger to society." The court continued, "[i]n weighing the factors under Section 3553(a), the Court finds that the need to protect society outweighs this mitigating factor." Thus, the court recognized that Tolbert's mental illness was a mitigating factor that potentially could justify a downward variance. The court balanced this mitigating factor with the need to protect the public and concluded that the need to protect the public was paramount. Contrary to Tolbert's argument, it was possible (and indeed necessary) for the district court to separate these concerns and weigh them against each other.

Finally, Tolbert argues that the district court based its sentence on an impermissible factor: his rehabilitative needs. The Supreme Court recently held that "a court may not impose or lengthen

a prison sentence to enable an offender to complete a treatment program or otherwise to promote

rehabilitation." *Tapia v. United States*, 131 S.Ct. 2382, 2393 (2011); *see also United States v.*

*Brooks*, 2011 WL 2746005 at *1 (6th Cir. July 15, 2011) (unpublished) (finding that a district court's

statement that the defendant "need[ed] more structure and rehabilitation very much" suggested the

possibility that the sentence was impermissibly based on the defendant's rehabilitative needs)

(alteration in original) (internal quotation marks omitted). The Supreme Court in *Tapia* also held,

however, that "[a] court commits no error by discussing the opportunities for rehabilitation within

prison or the benefits of specific treatment or training programs. To the contrary, a court properly

may address a person who is about to begin a prison term about these important matters." 131 S.Ct.

at 2392.

In the present case, after recounting how Tolbert had become increasingly violent over the

years, the district court stated, "Defendant is both out of control and dangerous. The Court finds that

the sentence in this case is necessary to protect the public and deter Defendant from committing

future crimes." The court then found that "the sentence provides Defendant with an *opportunity* for

substance abuse treatment" and that "the sentence provides Defendant with an *opportunity* for mental

health treatment." (emphasis added). The district court then imposed the fifty-four month sentence,

concluding, "[t]he sentence imposed provides just punishment for the offense while affording

Defendant an *opportunity* to rehabilitate himself." (emphasis added). The district court appears to

have justified the sentence based on the need to protect the public and to deter Tolbert from

committing future crimes, and it always couched the rehabilitative possibilities in terms of

"opportunity." The district court did not improperly impose the sentence to promote Tolbert's

rehabilitation but rather appropriately discussed the rehabilitative opportunities available to him while in prison.

In summary, the district court imposed a sentence of fifty-four months' imprisonment, which was within the range recommended by the Guidelines and thus was presumptively reasonable. Moreover, the district court did not select this sentence arbitrarily, base the sentence on impermissible factors, fail to consider relevant sentencing factors, or give an unreasonable amount of weight to any pertinent factor. *See United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010) (citations omitted). Thus, the sentence imposed by the district court is entitled to deference, and Tolbert has failed to show that his sentence was substantively unreasonable.

V.

For the reasons provided above, we affirm the district court's judgment. Tolbert has failed to establish that the district judge abused his discretion by failing to recuse himself from sentencing, that the court's finding that he was a member of a street gang was clearly erroneous, or that his sentence was procedurally or substantively unreasonable.