**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jason Paul ARNOLD, Defendant–**
**Appellant.**

**No. 14–1956.**

United States Court of Appeals,
Sixth Circuit.

Nov. 3, 2015.

BEFORE: MERRITT, DAUGHTREY, and GRIFFIN, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.

Defendant Jason Arnold was charged with being a felon in possession of a firearm. Prior to trial, Arnold moved to discharge his counsel and represent himself. During a hearing on the motion, the district judge attempted a *Faretta* colloquy, first asking Arnold whether he understood the charges against him; Arnold was unable or unwilling to answer this question. As a result, the court denied his motion without further conversation, and the case proceeded to trial. Following the jury's verdict finding Arnold guilty, the district court advised Arnold that it intended to depart upwardly in sentencing him because he suffered from "a serious mental health issue" that might require mental health treatment "of some length" to restore him to release status and protect the public. On appeal, Arnold contends (1) that the district judge's failure to conduct a proper colloquy before denying his motion to represent himself violated his Sixth Amendment right to self-representation, and (2) that his sentence is invalid because it was based on the impermissible ground of his need for mental health treatment. For the reasons set out below, we find no abuse of discretion in the district court's denial of Arnold's request to discharge counsel and represent himself, given his unfocused and unresponsive statements during the hearing on the motion, and affirm the defendant's conviction. However, we conclude that the district court did abuse its discretion in its decision to depart upwardly in calculating Arnold's sentence. Although that decision was influenced at least in part by the district judge's concern that Arnold's anger problems posed a threat to public safety, it was also driven by the court's belief that Arnold was in need of mental health treatment and that a shorter sentence would diminish the efficacy of that treatment, an improper consideration when imposing a sentence. We therefore vacate the sentencing portion of the district court's judgment and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2013, Arnold was arrested and indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Arnold pleaded not guilty to the charge. In the course of the pretrial

proceedings, Arnold underwent two competency evaluations; he was found competent for trial on both occasions. Arnold then filed a "motion for impartial dismissal," asserting that he was firing his attorney and intended to represent himself in his upcoming trial. The district court construed the motion as a motion to disqualify counsel and scheduled a hearing on the matter.

At the beginning of the hearing, the district court asked Arnold whether he understood the charge against him, a question to which Arnold never gave a direct reply. Instead, he repeatedly insisted upon relating his reasons for possessing the gun at issue. In response, the court repeatedly instructed Arnold that his explanation of his reasons for possessing the gun was not relevant to the hearing. At one point as Arnold began to explain his motive for purchasing the firearm, his counsel reminded the district judge that the purpose of the hearing was to consider Arnold's motion to disqualify counsel and represent himself. The judge replied by denying the motion "for the obvious ... record here that's being made."

Following Arnold's trial and conviction, the probation office prepared a presentence investigation report that calculated his Guidelines imprisonment range as 41 to 51 months, based on a total offense level of 20 and a criminal history category of III. In its sentencing memorandum, the government moved for an upward variance in Arnold's sentence, under 18 U.S.C. § 3553(a)(2), "to protect the public from Mr. Arnold." The government based its request for a variance on its claim that Arnold had acquired the firearm to "do harm to the people who removed Arnold's children from his custody" two months before Arnold purchased the gun.

After receiving the government's sentencing memorandum, the district court issued a notice of intent to depart upward, stating as the basis that:

> It appears from a review of the Presentence Report that Mr. Arnold suffers from a serious mental health issue which may necessitate mental health treatment of some length not only to restore Mr. Arnold to release status but protect the public.

Arnold filed a written objection to the notice, on the grounds that his mental health issues were "an impermissible sentencing factor" under *Tapia v. United States,* 564 U.S. 319, 131 S.Ct. 2382, 180 L.Ed.2d 357 (2011), and that his need for treatment could not provide a basis for determining or lengthening his sentence.

At the sentencing hearing, the government reiterated its position that an upward variance was appropriate because Arnold had intended to harm others when he purchased the firearm. Arnold countered that his intention in acquiring the gun was to commit suicide, not to harm others, and requested that the court deny the government's motion for an upward variance. The court rejected Arnold's claim that he intended to commit suicide with the rifle, noting that "the commission of suicide with a rifle and a scope makes not a whole lot of sense."

In sentencing Arnold, the district court first observed that, based on the conclusions in Arnold's psychological evaluations, on his frequent outbursts during court proceedings evidencing "a personality deficit that's potentially very dangerous," and on the loss of his children, home, and job, Arnold "was and remains very angry." This anger, the court remarked, warranted an upward departure for public safety. The court then noted that Arnold "desperately needs psychiatric intervention" and that, "in order to get that, the Court has to grant the government's motion to go outside and above the sentence guidelines."

The court also stated that Arnold's sentence required a balancing of his mental condition and public safety, and that "the balance for both issues ... is that we provide a means and a period of time when ... the Bureau of Prisons can work with him."

The government, apparently concerned that the court's articulation of its basis for departure ran afoul of *Tapia*, attempted to clarify that the departure should be based on a finding that Arnold was "an individual who's dangerous, whose criminal history is extensive, and [whose] risk of recidivating is ... heightened." The district judge responded to this statement by asking, "Didn't I say all that? Did I not say that?" Afterwards, however, while addressing the relevant sentencing factors under 18 U.S.C. § 3553(a), the court identified "protection to the public," in addition to Arnold's "need for medical and correctional treatment in this matter," as "adequate 3553(a) criteria" for imposing a sentence of 60 months incarceration, followed by a three-year period of supervised release. This appeal followed.

## DISCUSSION

### Arnold's Motion for Self-Representation

For reasons that are not completely obvious, in this circuit we do not have a clearly established standard of review for claims asserting the unconstitutional denial of the right to self-representation. *Cf. United States v. Ross*, 703 F.3d 856, 866–68 (6th Cir.2012) ("This Court has not clearly identified the appropriate standard of review for a trial court's decision to allow waiver of counsel."). Of particular pertinence in this case, however, we recently noted:

> When determining whether a mentally ill defendant "falls in a gray area between *Dusky's* minimal constitutional requirement that measures a defendant's ability to stand trial and a somewhat higher standard that measures mental fitness for" self-representation, the district court's decision merits deference. District courts "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant."

*United States v. Stafford*, 782 F.3d 786, 791 (6th Cir.2015) (quoting *Indiana v. Edwards*, 554 U.S. 164, 172, 177, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008)) (internal citation omitted).

The Sixth Amendment guarantees criminal defendants the right to representation by counsel as well as the right to waive the assistance of counsel and represent themselves. *Faretta v. California*, 422 U.S. 806, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The right to self-representation is not without limit, however. "[T]he government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). In this circuit, "[w]hen an accused wishes to represent himself, the district court must ask the defendant a series of questions drawn from, or substantially similar to, the model inquiry set forth in the *Bench Book for United States District Judges*." *Ross*, 703 F.3d at 867 (internal quotation marks omitted). The inquiry concerns the defendant's familiarity with the law, legal system, and the charges against him.

■ Arnold contends that the district court failed to conduct the proper inquiry before denying his motion to represent himself and that this failure violated his Sixth Amendment right to self-representa-

tion. In this case, however, the district court was faced with a defendant who would not, or could not, respond adequately to even the most basic question required by the model inquiry. Given this fact, coupled with initial concerns about Arnold's fitness to stand trial, the district court's reluctance to question him further is not only understandable but undeniably appropriate.

Moreover, Arnold incorrectly characterizes the district court's decision to abandon the inquiry as constitutional error. However, a court's obligation to conduct a colloquy substantially compliant with the model inquiry extends from our supervisory powers, not the Constitution. *See United States v. McDowell*, 814 F.2d 245, 249–50 (6th Cir.1987). Arnold's insistence that this error is structural, requiring automatic reversal, is similarly incorrect. Denials of the right to self-representation are structural errors, *see United States v. Davila*, —— U.S. ——, 133 S.Ct. 2139, 2149, 186 L.Ed.2d 139 (2013), but Arnold does not challenge the denial of his motion to represent himself; rather, he challenges the court's failure to conduct a full colloquy before denying that motion.[1]

But, even if we were to find that the district court's failure to complete the model inquiry before denying the defendant's motion was error, we would also find that the error was harmless. Given Arnold's insistence on responding to the court's questioning with tangential explanations of his reason for possessing the firearm, the court would not have granted Arnold's motion to represent himself in any event. Nor did denying Arnold the ability to represent himself at trial have

any effect on the outcome of that trial. During the hearing on his motion to discharge counsel, Arnold repeatedly admitted to possessing the firearm at issue and was obsessed with disputing the government's theory for why he had obtained the rifle. Nothing in the record suggests that he would have defended himself any differently at trial.

Under any standard of review, Arnold's self-representation claim fails. The district court did not abuse its discretion in denying Arnold's motion. Similarly, *de novo* review of the record reveals that Arnold's motion to waive counsel should not have been granted. Arnold's unfocused responses to the court's questioning, as well as his evident confusion about what information was and was not relevant to defending the charges against him, gave the court ample reason to conclude that Arnold would be "unable to carry out the basic tasks needed to present his own defense without the help of counsel." *Edwards*, 554 U.S. at 175–76, 128 S.Ct. 2379.

## Arnold's Sentence

As a threshold matter, we note the government's contention that Arnold's challenges to his sentence must be reviewed under the plain-error standard because he did not raise them in the district court. Our review of the record, however, plainly refutes this claim.

To preserve a claim of error, a party must "object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir.2004) (internal quotation marks omitted). Arnold did pre-

---

1. In this regard, Arnold's reliance on *Moore v. Haviland*, 531 F.3d 393 (6th Cir.2008), is misplaced. In *Moore*, we found structural error because the trial court not only failed to follow the model inquiry upon receiving the defendant's motion to proceed *pro se* but also failed to rule on the motion at all. 531 F.3d at 402–03, 404. Unlike in *Moore*, the district court here did rule on Arnold's motion.

serve his claim, initially by filing a written objection to the district court's notice of intent to depart upward, arguing that departing upward for the reasons the court stated in its notice would run afoul of *Tapia v. United States,* 564 U.S. 319, 131 S.Ct. 2382, 180 L.Ed.2d 357 (2011). During the sentencing hearing, Arnold's defense counsel reiterated his opposition to an upward variance or departure.

The basis for the government's contention that Arnold failed to preserve his claims is unclear. It could be based on his failure to restate his objections after sentence was imposed, or his failure to cite *United States v. Moses,* 106 F.3d 1273, 1277 (6th Cir.1997)—on which he now relies—during the sentencing hearing, or mere unfamiliarity with the record. *Bostic,* however, makes clear that only "objections not *previously* raised" are forfeited if not stated after the court's final request for objections. 371 F.3d at 872–73 (emphasis added). The district court was aware of the substance of Arnold's objection to its decision to depart, even if certain arguments in support of that objection now raised here were not articulated then.

Decisions to depart from the sentencing guidelines are reviewed for their reasonableness under the abuse-of-discretion standard. *Gall v. United States,* 552 U.S. 38, 46, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); *United States v. Moses,* 106 F.3d 1273, 1277 (6th Cir.1997). "[T]he abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.*

Under *Tapia,* "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." 131 S.Ct. at 2393. Eighteen U.S.C. § 3582(a) excludes a defendant's need for correction and rehabilitation from the factors considered in imposing a term of imprisonment. A defendant's mental illness cannot justify an upward departure under the United States Sentencing Guidelines, and a sentence extended on the basis of a defendant's need for psychiatric treatment is substantively unreasonable. *Moses,* 106 F.3d at 1280, 1281.

■ Arnold also contends that the district court's upward departure in sentencing him was an abuse of discretion because the court erroneously based this departure on the "future dangerousness" reflected in his extreme anger at the time of his arrest. This argument, however, does little to advance Arnold's challenge to his sentence. He insists that the court departed under United States Sentencing Guideline § 5K2.14, which permits a court to depart upward if "national security, public health, or safety was significantly endangered." But we held in *Moses* that § 5K2.14 does not permit an upward departure based on the defendant's future dangerousness, because the provision concerns the defendant's dangerousness at the time of the crime. *See Moses,* 106 F.3d at 1277–79. However, the district court did not reference § 5K2.14 during Arnold's sentencing hearing. Although the district court spoke in terms of departure, it seems clear from the record that the court intended to impose a variance under 18 U.S.C. § 3553, which permits a sentencing court to consider the need "to protect the public from further crimes of the defendant" in imposing its sentence. 18 U.S.C. § 3553(a)(2)(C). The court, then, did not err in extending Arnold's sentence on the grounds that his anger at the time of his arrest posed a potential future threat to public safety.

In sum, the record makes clear that the district court's sentence, although influenced in part by concern that Arnold posed a threat to public safety, was also driven by Arnold's need for mental health treatment while incarcerated, and the

court's belief that this treatment would not be completely effective if Arnold's sentence was limited to the Guidelines range. But our decision in *Moses* prohibits the extension of a defendant's sentence based on the need for treatment for mental illness, even if that mental illness creates a potential danger of violent behavior. 106 F.3d at 1280. Instead, the appropriate mechanism for protecting the public from danger stemming from a convicted person's mental illness is commitment under 18 U.S.C. § 4246, "rather than an extended criminal sentence." *Moses,* 106 F.3d at 1281. Even a variance that lengthened Arnold's sentence, if it did so in order to accommodate treatment for mental illness, violates *Tapia* and § 3582(a).

## CONCLUSION

For the reasons set out above, we uphold the district court's denial of Arnold's motion to discharge counsel and represent himself, AFFIRM Arnold's conviction, VACATE Arnold's sentence, and REMAND this case for resentencing.