### *PRELIMINARY PRINT*

## VOLUME 605 U. S. PART 2

### PAGES 360–375

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 12, 2025

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published.   Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## SOTO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 24–320.   Argued April 28, 2025—Decided June 12, 2025

The Barring Act, 31 U. S. C. § 3702, establishes default settlement procedures for claims against the Government and subjects most claims to a 6-year limitations period.   However, the Act includes an exception: If "another law" confers authority to settle a claim against the Government, that law displaces the Barring Act's settlement mechanism, including its limitations period.   § 3702(a).   In 2002, Congress enacted a statute providing "combat-related special compensation" (CRSC) to qualifying veterans who have suffered combat-related disabilities.   10 U. S. C. § 1413a.   Under federal law, retired veterans generally must waive a portion of their military retirement pay to receive Veterans Affairs (VA) disability benefits, but the CRSC statute allows combat-disabled retirees to receive special compensation up to the amount of waived retired pay.

Petitioner Simon Soto served in the Marine Corps from 2000 to 2006, including two tours in Operation Iraqi Freedom.   He was medically retired in 2006 and later received a 100-percent disability rating for post-traumatic stress disorder from the VA.   In 2016, Soto applied for CRSC payments.   The Secretary of the Navy approved his application but limited retroactive compensation to six years, citing the Barring Act's limitations period.   Soto filed a class-action lawsuit arguing that the Barring Act's 6-year limitations period does not apply to CRSC claims because the CRSC statute constitutes "another law" that provides its own settlement mechanism.   The District Court granted summary judgment for the class, but the Federal Circuit reversed, holding that the CRSC statute does not explicitly grant settlement authority and therefore cannot displace the Barring Act.

*Held*: The CRSC statute confers authority to settle CRSC claims and thus displaces the Barring Act's settlement procedures and limitations period.   Pp. 367–375.

   (a) The term "settle" in the Government-claims context refers to determining the validity of a claim and the amount of money a claimant is due.   See *Illinois Surety Co.* v. *United States ex rel. Peeler*, 240 U. S. 214, 219–220.   A statute confers settlement authority so long as it vests an entity with these powers.   While the most straightforward way to

confer settlement authority may be to use the term "settle," Congress need not "'use magic words.'" *Department of Agriculture Rural Development Rural Housing Service* v. *Kirtz*, 601 U. S. 42, 48–49. To determine whether a statute constitutes "another law" that displaces the Barring Act's settlement procedures, courts must examine the text, context, and structure of "the entire statutory scheme" to analyze whether the law confers authority to determine both a claim's validity and the amount due. *Winkelman* v. *Parma City School Dist.*, 550 U. S. 516, 523; see *Illinois Surety*, 240 U. S., at 219–220. Pp. 367–369.

(b) The CRSC statute meets these requirements. The law confers upon "[t]he Secretary concerned" the "[a]uthority" to pay each "eligible" claimant a "monthly amount" "determined" under the statute's terms. 10 U. S. C. § 1413a(a). Regarding validity, the statute provides that the Secretary concerned shall "conside[r]" whether a CRSC applicant is an "eligible" "combat-related disabled uniformed services retiree." § 1413a(d). Because the Secretary "shall pay" CRSC payments to "each eligible" veteran, § 1413a(a), determining a claimant's eligibility is tantamount to determining the validity of his claim. The statute also confers authority on the Secretary to determine the amount due by instructing the Secretary to pay a specific monthly amount. §§ 1413a(b)(1)–(3). Taken as a whole, the statute establishes a unique, self-contained, comprehensive compensation scheme that authorizes the Secretary concerned to determine both the validity of CRSC claims and the amount due on them, thus creating a separate settlement mechanism that displaces the Barring Act's default procedures. Pp. 369–370.

(c) The Federal Circuit erred by imposing undue requirements on Congress's ability to confer settlement authority and by disregarding the CRSC statute's plain text. The court's demand for "specific language" and its alternative requirement that a statute provide a specific limitations period to displace the Barring Act are rejected. Congress need not use particular words to confer settlement authority, and, in this unique statutory regime, it is not unreasonable to think that Congress would have provided a settlement mechanism without a specific limitations period. The Government's arguments for affirmance are similarly unpersuasive, including its insistence on "hallmark formulations" to confer settlement authority and its concern about destabilizing Government programs. The CRSC statute's separate subsections, in combination, create a comprehensive benefits regime that authorizes the Secretary concerned to determine both the validity of CRSC claims and the amount due on them. Pp. 370–375.

92 F. 4th 1094, reversed and remanded.

THOMAS, J., delivered the opinion for a unanimous Court.

*Tacy F. Flint* argued the cause for petitioner. With her on the briefs were *J. Simone Jones*, *Nathaniel C. Love*, *Emily M. Wexler*, *Ankur Shingal*, *Barton F. Stichman*, *Rochelle Bobroff*, and *Lakeisha F. Mays.*

*Caroline A. Flynn* argued the cause for the United States. With her on the brief were *Acting Solicitor General Harris*, *Acting Assistant Attorney General Roth*, *Deputy Solicitor General Stewart*, and *Charles W. Scarborough.** 

JUSTICE THOMAS delivered the opinion of the Court.

Title 31 U. S. C. § 3702, known as the Barring Act, establishes a default settlement regime for certain claims brought against the Government. The Barring Act subjects most claims to a 6-year limitations period. § 3702(b)(1). But, the Act includes an exception: If "another law" confers authority to settle a claim against the Government, then that law displaces the Barring Act's settlement mechanism—including its limitations period—as to that claim. § 3702(a). The question before us is whether a law providing "[c]ombat-related special compensation" (CRSC) to qualifying veterans confers authority to settle CRSC claims. 10 U. S. C. § 1413a. We hold that it does, and thus that the settlement procedures and limitations established under the Barring Act do not apply to claims for CRSC payments.

## I

### A

The Barring Act establishes default procedures for how a variety of "claims of or against the United States Government shall be settled." 31 U. S. C. § 3702(a).

---

*Briefs of *amici curiae* urging reversal were filed for the Connecticut Veterans Legal Center et al. by *Amy Mason Saharia* and *Diane Boyd Rauber*; for Military-Veterans Advocacy, Inc., et al. by *Melanie L. Bostwick*, *Melanie R. Hallums*, and *John B. Wells*; and for the National Law School Veterans Clinic Consortium by *Katie M. Becker.*

The term "settle" in this context refers to determining the amount of money a claimant is due. See *Illinois Surety Co.* v. *United States ex rel. Peeler*, 240 U. S. 214, 219 (1916). This meaning of "settlement" flows from the well-established principle that in the Government-claims context, when the Government "determine[s]" that a claim is "valid," the claim "should be paid in full." Office of Gen. Counsel, GAO, Principles of Federal Appropriations Law 11–6 (1982). Thus, the inquiries relevant to settling a claim are straightforward: First, we ask whether the claim is valid; and second, if it is, we ask how much the Government owes.

The Barring Act authorizes certain entities to settle certain types of claims. See §§ 3702(a)(1)–(4). Relevant here, the Act provides that the Secretary of Defense will settle "claims involving uniformed service members' pay, allowances, travel, transportation, payments for unused accrued leave, retired pay, and survivor benefits." § 3702(a)(1)(A). Most claims covered under the Barring Act are subject to a 6-year limitations period. § 3702(b)(1).

But, not all claims against the Government fall within the Barring Act's ambit. While the Barring Act provides a default framework for settling and processing claims against the Government, it includes a significant exception: If "another law" creates a separate settlement process, then that process displaces the Act's settlement mechanism. § 3702(a); see also § 3702(b)(1)(A) (stating that the Act's 6-year limitations period does not apply if "another law" provides otherwise).

## B

In 2002, Congress enacted the CRSC statute, 10 U. S. C. § 1413a, to provide special payments to military retirees who have suffered combat-related disabilities. See Bob Stump National Defense Authorization Act for Fiscal Year 2003, § 636, 116 Stat. 2574–2576. Under federal law, retired veterans generally must waive a portion of their military retirement pay in order to receive disability benefits from the De-

partment of Veterans Affairs (VA). 38 U. S. C. §§ 5304–
5305. But, under the CRSC statute, a retired veteran who
establishes that his disability is attributable to a combat-
related injury may receive special compensation up to the
amount of waived retired pay. CRSC payments were ini-
tially limited to military retirees who, in addition to having
suffered a combat-related disability, had served for at least
20 years. Congress later amended the statute to cover all
combat-disabled retirees who are eligible for retired pay, ef-
fective January 1, 2008. National Defense Authorization
Act for Fiscal Year 2008, § 641, 122 Stat. 156.

The CRSC statute establishes a comprehensive framework
for CRSC claims, governing everything from a claimant's ini-
tial application to the ultimate disbursal of payments. And,
the statute confers upon "[t]he Secretary concerned"[1] au-
thority to effect key determinations throughout this process.
At the beginning of the CRSC claims process, the statute
expressly requires the Secretary concerned to "conside[r]"
whether the applicant is "eligible" for CRSC payments. 10
U. S. C. § 1413a(d).[2] In other words, the Secretary con-
cerned must confirm that the applicant is "entitled to retired
pay" and "has a combat-related disability." § 1413a(c). The
statute defines a qualifying "'combat-related disability'" as
one that is either "attributable to an injury for which the

———————

[1] "'Secretary concerned'" refers to the Secretary of the Army, Navy,
Air Force, or Homeland Security, depending on the military department
from which the CRSC applicant retired. 10 U. S. C. § 101(a)(9).

[2] Subsection (d) further authorizes the Secretary of Defense to "pre-
scribe procedures and criteria under which a disabled uniformed services
retiree may apply" to the Secretary concerned. § 1413a(d). The Secre-
tary of Defense has set forth those criteria in regulations and program
guidance. See 7B Dept. of Defense, DoD 7000.14–R, Financial Manage-
ment Regulation, ch. 63 (June 2024) (DoD FMR); see also App. 77–107
(Jan. 2004 Guidance). Among other things, the guidance requires CRSC
recipients to be entitled to retired pay and to have a service-connected
disability that the VA rates as at least 10 percent disabling. DoD FMR,
at 63–6 to 63–9, 63–19; App. 83–87.

member was awarded the Purple Heart," or that the claimant incurred in armed conflict, during hazardous service or conditions simulating war, or through an instrumentality of war. § 1413a(e). Disabilities that "are not combat-related" "will not be considered in determining eligibility for CRSC or the amount of CRSC payable." App. 89.

Section 1413a separately establishes how to determine the monthly amount of CRSC payments to which an eligible claimant is entitled. Subsection (b)(1) states that "the monthly amount to be paid . . . for any month is the amount of compensation to which the retiree is entitled under title 38 for that month, determined without regard to any disability of the retiree that is not a combat-related disability." Subsection (b)(2) sets a cap on the amount a claimant may receive. And, subsection (b)(3) provides specific rules to follow in the case of retirees who are retired under a separate chapter of Title 10.

The CRSC statute does not include a statute of limitations or otherwise expressly limit the number of months for which an applicant may obtain payment.

C

Corporal Simon Soto, petitioner here, served honorably in the United States Marine Corps from 2000 to 2006. During the first of his two tours of duty in Operation Iraqi Freedom, Soto served in Mortuary Affairs. In that role, Soto "was assigned to 'search for, recover, and process the remains' of war casualties." App. 15. He struggled to adjust to civilian life following deployment and eventually received a diagnosis for post-traumatic stress disorder (PTSD), which his physicians attributed to his combat experiences. Soto was medically retired from the Marine Corps in 2006 and received numerous medals and commendations for his service.

Soto later sought service-connected disability compensation from the VA. The VA ultimately assigned him a 100-percent disability rating for his PTSD, representing "[t]otal

occupational and social impairment," 38 CFR § 4.130 (2024), and awarded Soto disability compensation in June 2009.

In June 2016, Soto submitted an application to the Navy seeking CRSC payments based on his combat-related PTSD. The Secretary of the Navy approved Soto for CRSC benefits in October 2016 and authorized him to receive retroactive compensation going back six years, to July 2010. The reason that Soto was eligible for only six years' worth of CRSC payments, the Government explained, was that "CRSC is subject to the [Barring Act's] 6-year statute of limitations." App. 37.

The following year, Soto filed a class-action lawsuit in the United States District Court for the Southern District of Texas. He asserted that the Barring Act's 6-year limitations period does not apply to CRSC claims and that he was therefore entitled to retroactive CRSC payments for the months dating back to January 1, 2008—the effective date of the statutory amendment that expanded CRSC eligibility to include combat-disabled medical retirees who, like him, had served for fewer than 20 years. See *supra*, at 364.

After certifying a nationwide class consisting of former servicemembers " 'whose CRSC applications . . . were granted, but whose amount of CRSC payment was limited by [the Barring Act's] statute of limitations,' " the District Court entered summary judgment for the class. See 2021 WL 7286022, *1 (SD Tex., Dec. 16, 2021). Because the CRSC statute "defines eligibility for CRSC, helps explain the amount of benefits and instructs the Secretary of Defense to prescribe procedures and criteria for individuals to apply for CRSC," the court concluded that the statute constitutes " 'another law' " that "provides its own settlement mechanism," and so displaces the Barring Act's settlement procedures. *Id.*, at *2–*3.

The Federal Circuit reversed. "To confer settlement authority and displace the Barring Act," the court reasoned, "a statute must explicitly grant an agency or entity the author-

ity to settle claims." 92 F. 4th 1094, 1098 (2024). The court determined that Congress typically confers settlement authority "by use of the term 'settle'" or other "specific language"; absent such language, a statute "cannot displace the Barring Act, unless another statute provides a 'specific' provision setting out the period of recovery." *Id.*, at 1099. The Federal Circuit thus concluded that the CRSC statute "only establishes who may be *eligible* for CRSC payments, not *how* claimants can have those claims settled," and thus fails to confer settlement authority. *Ibid.*

Judge Reyna dissented. On his view, several of §1413a's provisions, including those that authorize the Secretary concerned to determine CRSC eligibility and the proper amount of payments, confirm that the statute establishes a process that meets the common understanding of settlement. *Id.*, at 1102–1103.

We granted certiorari to decide whether the CRSC statute provides a settlement mechanism that displaces the default procedures and limitations set forth in the Barring Act. See 604 U. S. 1096 (2025).[3]

## II

### A

To decide whether the CRSC statute provides a settlement mechanism that displaces the Barring Act, we first address how this Court has construed "settlement" of claims against the Government and what is required for a statute to confer settlement authority.

As both parties recognize, this Court has made clear that "[t]he word 'settlement' in connection with public transactions and accounts has been used from the beginning to de-

---

[3] The Federal Circuit held that CRSC payments are "claims" that involve "'retired pay,'" 92 F. 4th, at 1100, and thus that they fall within the Barring Act's scope. We take these threshold determinations as "[g]iven" for purposes of this opinion. See 604 U. S. 1096 (2025) (granting certiorari on a modified question presented).

scribe administrative determination of the amount due." *Illinois Surety,* 240 U. S., at 219; see Brief for Petitioner 22; Brief for United States 24. As referenced above, agency guidance reflects this established understanding of "settlement." See *supra,* at 363 (citing Principles of Federal Appropriations Law 11–6). Simply put, the authority "to settle" a claim against the United States is the power both to "'determine upon the validity of'" the claim, and to "determin[e] . . . the amount due" on it. *Illinois Surety,* 240 U. S., at 219–220 (emphasis deleted).

A statute confers settlement authority so long as it vests an entity with the power to determine both a claim's validity and amount due. *Ibid.* We have explained that, in the context of waiving sovereign immunity, Congress need not "state its intent in any particular way," or "use magic words" to effectuate a waiver. *Department of Agriculture Rural Development Rural Housing Service* v. *Kirtz,* 601 U. S. 42, 48–49 (2024) (internal quotation marks omitted). That same principle applies here. While the most straightforward way to confer settlement authority may be to "use . . . the term 'settle,'" 92 F. 4th, at 1099, the presence of that word—or any other specific language—is not necessary. Accord, *e. g.,* *Hernandez* v. *Department of Air Force,* 498 F. 3d 1328, 1330–1331 (CA Fed. 2007) (holding that Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U. S. C. §§ 4301–4333, conferred settlement authority despite referring neither to "settlement" nor "claims"); Brief for United States 26–28 (acknowledging "other statutory formulations that do not use the word 'settle'" but that nevertheless "have been found to confer settlement authority"); Tr. of Oral Arg. 38 (same).

To decide whether a statute constitutes "another law" that displaces the Barring Act's settlement procedures, 31 U. S. C. § 3702(a), we therefore look to the text, context, and structure of "the entire statutory scheme" at issue, *Winkelman* v. *Parma City School Dist.,* 550 U. S. 516, 523 (2007), and ana-

lyze whether the law confers authority to both determine a claim's validity and determine the amount due on the claim. See *Illinois Surety*, 240 U. S., at 219–220.

B

The CRSC statute meets these requirements. At the outset, the law confers upon "[t]he Secretary concerned" the "[a]uthority" to pay each "eligible" claimant a "monthly amount" that is "determined" under the terms of the statute. 10 U. S. C. §1413a(a). This grant of authority includes the power to determine both the "'validity'" of claims for CRSC payments and the "amount due" on each claim. *Illinois Surety*, 240 U. S., at 219–220 (emphasis deleted).

Regarding validity, the CRSC statute provides that the Secretary concerned shall "conside[r]" whether a CRSC applicant is an "eligible" "combat-related disabled uniformed services retiree." §1413a(d). Determining an applicant's eligibility requires the Secretary concerned to assess whether the applicant has followed the "procedures" and met the "criteria" established by the Secretary of Defense. *Ibid.*; see *supra*, at 364–365; App. 83–90, 92–95 (administrative guidance addressing CRSC criteria, applications, and bases for eligibility determinations). Because the Secretary concerned "shall pay" CRSC payments to "each eligible" veteran, §1413a(a), in this context determining a claimant's eligibility is tantamount to determining the validity of his claim. Thus, by charging the Secretary concerned to "conside[r]" and evaluate each applicant's "eligib[ility]," §1413a(d), the CRSC statute's plain text authorizes the Secretary to "'determine upon the validity of'" a claim for CRSC payments, *Illinois Surety*, 240 U. S., at 220 (emphasis deleted).

The CRSC statute also confers to the Secretary concerned authority to "administrative[ly] determin[e] . . . the amount due" on an eligible veteran's claim. *Id.*, at 219. Subsection (a) instructs the Secretary to pay a specific "monthly amount

. . . determined under subsection (b)." Subsection (b), in turn, details precisely how the Secretary will "[d]etermin[e]" the monthly payments contemplated under subsection (a), sets a "[m]aximum amount" for these payments, and provides "[s]pecial rules" that apply to CRSC payments for certain retirees. §§ 1413a(b)(1)–(3).[4]

At bottom, § 1413a establishes a self-contained, comprehensive compensation scheme for a narrowly defined group of exceptionally deserving claimants. Taken as a whole, see *Winkelman*, 550 U. S., at 523, the statute's unique combination of characteristics authorizes the Secretary concerned to determine both the validity of CRSC claims and the amount due on them. The statute thus creates a separate settlement mechanism—*i. e.*, "another law"—that displaces the Barring Act's default settlement procedures, including its limitations period. 31 U. S. C. § 3702(a).

## III

### A

The Federal Circuit reached the opposite conclusion below by imposing undue requirements on Congress's ability to

---

[4] To be sure, both subsections (a) and (b) refer to the monthly CRSC payments being "determined," and, being in the passive voice, do not expressly state who will undertake that action. But, "context can confine a passive-voice sentence to a likely set of actors," *Bartenwerfer* v. *Buckley*, 598 U. S. 69, 76 (2023), and here we do not think that Congress's use of the passive voice leaves ambiguity as to who has authority to determine the amount due on CRSC claims. Again, the statute expressly authorizes the Secretary concerned to determine a claim's validity at the outset and to ultimately disburse payment. See §§ 1413a(a), (d). Nothing in the text suggests that any other person or Government entity interposes between application and payment to "determin[e]" the amount due on the claims. § 1413a(b). Therefore, the most natural reading of subsection (b) is that it authorizes the same entity that validates and pays claims to conduct the interim business of determining how much the Government must pay. Accord, Brief for United States 37 (acknowledging that § 1413a may be "best read to identify the 'Secretary concerned' as the person who should make the relevant determinations" regarding payment amount).

confer settlement authority and by disregarding the CRSC statute's plain language.

The Federal Circuit reasoned that for a statute to provide settlement authority, Congress must use "specific language" that authorizes a Government entity to "*settle* a claim— which will typically be done by use of the term 'settle.'" 92 F. 4th, at 1099. Absent such language, the court continued, a statute may authorize settlement only if it "provides a 'specific' provision setting out the period of recovery." *Ibid.*

We reject both premises. As this Court has repeatedly explained, Congress "need not state its intent in any particular way," and "[w]e have never required that Congress use magic words." *FAA* v. *Cooper*, 566 U. S. 284, 291 (2012); see also, *e. g., Kirtz*, 601 U. S., at 48. Thus, even if Congress "typically" confers the authority to settle claims "by use of the term 'settle,'" 92 F. 4th, at 1099, that standard practice does not bind legislators to specific words or formulations. It is enough that a statute authorizes an entity to determine both the validity of a claim and the amount due on it. See *Illinois Surety*, 240 U. S., at 219–220.

Nor must a settlement mechanism always feature a "'specific'" limitations period to fit within the Barring Act's "another law" exception. 92 F. 4th, at 1099. If a statute establishes a settlement mechanism and thus constitutes "another law" under §3702(a), then it nullifies *all* of the Barring Act's procedures as to the alternative settlement mechanism—limitations period included. To be sure, Congress's choice to authorize the settlement of claims may often coincide with a statute of limitations, and we would not lightly assume that Congress wished to expose the Government to unlimited liability. But where, as here, the statutory scheme involves a small group of particularly deserving claimants, it is not extraordinary to think that Congress wished to forgo a limitations period. A settlement mechanism does not require a limitations period. Thus, so long as a statute confers authority to determine the validity of a claim and the amount

due on it, the law displaces the Barring Act in its entirety irrespective of whether it separately addresses timing.

Further, the CRSC statute clearly authorizes the Secretary concerned to determine CRSC claimants' eligibility according to specific criteria, and those criteria say nothing about time limits. See 10 U. S. C. §§ 1413a(a), (c), (d). Under these circumstances, the most reasonable inference is that the process of "'determin[ing] upon the validity'" of a CRSC claim simply does not involve applying a defined period of recovery. *Illinois Surety*, 240 U. S., at 220 (emphasis deleted); see also Tr. of Oral Arg. 60–61 (Government agreeing that Congress has created settlement processes that displace the Barring Act but lack limitations periods).

The Federal Circuit's focus on the absence of specific words and provisions led it to misinterpret the CRSC statute. On the Federal Circuit's view, because § 1413a lacks specific language and its own limitations period, it establishes only "who may be *eligible* for CRSC payments, not *how* claimants can have those claims settled." 92 F. 4th, at 1099. But, that interpretation "is belied by the provisions of the CRSC statute itself." *Id.*, at 1104 (Reyna, J., dissenting). The CRSC statute does not merely describe "who may be *eligible*," *id.*, at 1099 (majority opinion); it explicitly instructs potential claimants to apply to the Secretary concerned, and vests the Secretary with the authority to determine those applicants' eligibility, see §§ 1413a(a), (d). And, contrary to the Federal Circuit's assertion, the statute establishes exactly "*how*" the claims will be settled, *id.*, at 1099— again, by granting the Secretary "[a]uthority" to "conside[r]" applicants' eligibility, and then prescribing how the Secretary will "determin[e]" the amount due. §§ 1413a(a), (b), (d); see *supra*, at 364–365.

B

The Government's arguments for affirmance are no more persuasive. To start, the Government agrees that a statute

may authorize settlement without necessarily using the word "settle," Brief for United States 26, 41–42, yet, echoing the Federal Circuit, insists that a statute still must feature "hallmark formulations" to confer settlement authority, Tr. of Oral Arg. 42. Such "hallmark formulations," the Government tells us, include language that "speak[s] of claims being allowed or disallowed," "refer[s] to a finding being final and conclusive," or designates "authority to sue or be sued." *Id.*, at 38, 65; see also Brief for United States 26–28. But, it is difficult to see how the Government's "hallmark formulations" inquiry does not devolve into the same sort of " 'magic words' " test that we have so often denounced. *Kirtz*, 601 U. S., at 48–49. As with the Federal Circuit's demand for specific language and provisions, we reject the Government's "formulations"-focused attempt to limit the ways that Congress may convey settlement authority.

The Government similarly reprises the Federal Circuit's assertion that the CRSC statute does not authorize settlement because it lacks any "timing requirement," and further insists that our reading "supplant[s]" the Barring Act's limitations period "through [Congress's] silence." Brief for United States 17, 30–32. For the reasons we have already explained, we disagree with the proposition that a settlement mechanism must include a limitations period to displace the Barring Act. See *supra*, at 371. And, the Government's assertion that our interpretation permits the CRSC statute *sub silentio* to "supplant" the Barring Act misunderstands the CRSC statute. In enacting § 1413a, Congress did not displace the Barring Act's limitations period through "silence"; Congress displaced the Barring Act's procedures and limitations by authorizing the Secretary concerned to determine the validity and amount due on—and thus to settle—CRSC claims. See §§ 1413a(a), (b), (d); *supra*, at 369–371.

The Government also resists the conclusion that § 1413a confers authority to "determin[e] the amount 'due' " on a

claim for CRSC payments. Brief for United States 24. According to the Government, such a determination "involves more than assessing whether the claim has merit or calculating what the claimant might be owed"; it "may also entail . . . auditing the relevant account, making adjustments for any applicable debts or offsets, and effecting a final disposition." *Ibid.* Because the CRSC statute does not explicitly assign this level of auditing and adjustment, the Government suggests that it does not permit the Secretary concerned to determine the amount due, and thus cannot establish a mechanism for settling CRSC claims.

This argument proves too much. The Barring Act indisputably confers settlement authority, yet it says nothing about audits or offsets. Instead, it simply authorizes the settlement of "claims." 31 U. S. C. §3702(a). The CRSC statute confers comparable settlement authority, see *supra*, at 369–371, and is likewise silent as to the extra accounting procedures that the Government contemplates. We decline the Government's invitation to read additional requirements into the "administrative determination of the amount due." *Illinois Surety,* 240 U. S., at 219.

Finally, the Government warns that if the CRSC statute "create[s] an independent settlement mechanism," then every statute containing even one of §1413a's relevant "features" might also displace the Barring Act, and in turn "destabilize" various Government programs. See Brief for United States 36–41. The conclusion does not follow the premise. In holding that the CRSC statute confers authority to settle claims for CRSC payments, we do not suggest that each singular component or subsection of the statute is independently sufficient to establish settlement authority. To the contrary, we hold only that §1413a's separate subsections—*in combination*—create a comprehensive CRSC benefits regime spanning from application to payment, and that, within this framework, Congress has authorized the Secretary concerned to determine both the validity of applicants'

CRSC claims and the amount due on them. See *supra*, at 369–371.[5]

In all events, while we acknowledge that the Barring Act's limitations period plays an important role in managing the Government's potential retroactive liability, "we will not presume . . . that any result consistent with [the Government's] account of the statute's overarching goal must be the law." *Henson* v. *Santander Consumer USA Inc.*, 582 U. S. 79, 89 (2017). Even if we thought sound policy called for a narrower carveout to the Barring Act's procedures than the "another law" exception that Congress enacted, 31 U. S. C. §3702(a), that policy choice is a "matte[r] for Congress, not this Court, to resolve," *Henson*, 582 U. S., at 90.

\* \* \*

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[5] As the Government itself recognized at oral argument, the number of statutes that include *all* of the material features of the CRSC statute—as opposed to just *one* or *some* of those features—appears to be relatively small. See Tr. of Oral Arg. 47–52 (referring to "six statutes" that arguably authorize a Government entity to determine both the validity of a claim and the amount due). Notwithstanding this acknowledgment, the Government has "reserv[ed] the right to distinguish" these statutes, *id.*, at 51, and we express no view as to whether any other statute displaces the Barring Act in a way analogous to the CRSC statute.

REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

p. 373, line 4 from bottom: "on" is inserted after "due"