RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0330p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GENE CURTIS ROPER,

*Defendant-Appellant.*

No. 24-5834

Appeal from the United States District Court for the Eastern District of Tennessee at Greeneville.
No. 2:23-cr-00104-1—Clifton Leland Corker, District Judge.

Decided and Filed:  December 4, 2025

Before:  GRIFFIN, THAPAR, and HERMANDORFER, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Conrad Benjamin Kahn, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Brian Samuelson, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

_____

## OPINION

_____

HERMANDORFER, Circuit Judge.  As a convicted sex offender, Gene Roper must register his whereabouts with state authorities.  He has a long track record of failing to do so.  After Roper's latest failure-to-register conviction, the district court sentenced him to prison.  It also imposed a 20-year term of supervised release, which was above the U.S. Sentencing Guidelines' recommendation but below the statutory maximum of lifetime supervision.  In explaining the supervised-release term, the district court cited—among other considerations—

Roper's history of mental-health issues and the treatment that supervision could facilitate. Roper now says the district court erred by relying in part on his mental illness to justify the 20-year term of supervision. We disagree. And Roper's supervised-release term otherwise falls within the statutory limits and is reasonable. We therefore affirm.

I

In 2005, a Nevada court convicted Gene Roper of attempted lewdness with a child under the age of 14 because he had sex with an 11-year-old girl. That conviction meant Roper had to register as a sex offender under the Sex Offender Registration Notification Act. While incarcerated, Roper amassed a lengthy list of disciplinary violations. Problems continued once Roper was released on supervision. He lied about whether children were present in his home. He refused to participate in sex-offender treatment. And his counselor opined that it would be dangerous to have a female probation officer supervise Roper.

Roper was convicted of his first failure-to-register offense under state law in 2010. He was originally sentenced to a term of probation. While on probation, Roper was found living with children and continuing to have unauthorized contact with minors. His probation was revoked within a year. While incarcerated, Roper again committed multiple disciplinary violations. In the years following his release, Roper was convicted for resisting arrest (three times) and battery. Roper received his second conviction for failure to register under state law in 2017 and his third in 2020. Once again, Roper repeatedly violated the terms of his supervision for the third failure-to-register offense.

That brings us to the current failure-to-register offense, Roper's fourth. In 2022, Roper moved from Nevada to Johnson City, Tennessee without informing either State's sex-offender registry as required. Roper was arrested after the Johnson City Police Department received a tip that he was living in the area and was homeless. Investigators later learned that eight police reports documented Roper's contact with Johnson City police following his relocation to the area.

The Government charged Roper with one count of failing to register as a sex offender in violation of 18 U.S.C. § 2250(a).  Roper's counsel sought a competency evaluation.  That evaluation found Roper competent to stand trial, and he then pled guilty.

The district court received sentencing memoranda from the Government and Roper, as well as a presentence report from the Probation Office.  Roper's submission highlighted his mental-health history and need for psychological treatment.  At the sentencing hearing, counsel for Roper and the Government discussed Roper's mental illness, criminal history, homelessness, and drug addiction.  Roper's counsel explained that Roper had a "life-long struggle with mental health" and has been diagnosed with PTSD, depression, anxiety, ADHD, and bipolar disorder. Sentencing Tr., R.53, PageID 896-97.  Roper told the district court that his "mental health," coupled with his homelessness and drug addiction, "contributed to [his] crime."  *Id.* at PageID 902.  The Government, for its part, acknowledged those factors but maintained that Roper's repeated failure to register and lengthy criminal history justified a significant sentence.

The district court sentenced Roper to 30 months' imprisonment.  Roper does not appeal that decision.  And relevant here, the district court—consistent with the Probation Office's recommendation—imposed a 20-year term of supervised release to follow Roper's incarceration. That was greater than the Sentencing Guidelines' suggested five-year term, which, at the time of Roper's sentencing hearing, merely incorporated the statutory minimum term of supervision for Roper's offense.  *See* U.S.S.G. § 5D1.2 (U.S. Sent'g Comm'n 2024); 18 U.S.C. § 3583(k).  But the 20-year term was well below the statutory maximum of lifetime supervision.  *See* 18 U.S.C. § 3583(k).

The district court explained the basis for the 20-year term of supervision in a discussion on the record.  In the district court's view, the term of supervised release would ensure that Roper would "have somebody overseeing" him so he could "get[] the kind of mental health help that [he] need[s]."  Sentencing Tr., R.53, PageID 918.  Because Roper would periodically report to his probation officer, supervision would allow regular checks that Roper was "doing okay." *Id.*

The district court further determined that the 20-year term was necessary "for public safety reasons." *Id.* at PageID 928. Roper, the district court explained, had "16 criminal history points"—which put him in the highest criminal-history category—based on convictions for "violence" and "failure to register," as well as attempted "lewdness with a child under the age of 14." *Id.* at PageID 927. In addition, Roper's previous "non-complian[ce] while on supervision," "refus[al] to complete sex offender counseling as required," and statement that "he didn't do anything wrong" when he had sex with a minor all demonstrated that Roper's "self awareness may be lacking." *Id.* at PageID 927-28. That concern, coupled with Roper's substantial "criminal history," indicated to the district court that Roper "pose[d] a risk to the public long term." *Id.* at PageID 927. The district court also wanted to ensure Roper would remain "compliant with the law." *Id.* at PageID 918. Considering all those factors, the district court reasoned that Roper's background "warrant[ed] a longer period of supervision than what . . . 5 years would accomplish" and that "the public deserves to have somebody like [Roper] supervised for" 20 years. *Id.* at PageID 919, 927. As conditions of supervised release, the district court ordered Roper to undergo mental-health treatment, substance-abuse testing or treatment as directed by his probation officer, and an anger-management program.

Roper timely appealed, and we have jurisdiction. *See* 28 U.S.C. § 1291.

II

On appeal, Roper challenges both the procedural and substantive reasonableness of his 20-year term of supervised release. To determine whether a sentence is procedurally reasonable, we consider whether the district court "properly calculated the guidelines range, treated that range as advisory, considered the sentencing factors in 18 U.S.C. § 3553(a), refrained from considering impermissible factors, selected the sentence based on facts that are not clearly erroneous, and adequately explained why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (cleaned up). Substantive reasonableness considers whether "the court placed too much weight on some of the § 3553(a) factors and too little on others" such that the "sentence is too long (if a defendant appeals) or too short (if the government appeals)." *Id.* at 442. We review both procedural and substantive reasonableness for abuse of discretion. *Id.* at 440, 442.

A

1

We address procedural reasonableness first. Roper asserts that the district court considered an impermissible sentencing factor when it based the 20-year term of supervised release in part on his diagnosed history of mental illness. We disagree.

In the federal system, district courts may impose distinct "part[s]" of a sentence. 18 U.S.C. § 3583(a). One "part" is a "term of imprisonment" that involves placing the defendant in the custody of a correctional facility. *Id.* In addition, and at issue here, "[a] judge who imposes a term of imprisonment may—and sometimes must—impose a postimprisonment term of supervised release." *Esteras v. United States*, 606 U.S. 185, 192 (2025). By statute, the permissible length of supervised-release terms depends on the offense of conviction. *See* 18 U.S.C. § 3583(b), (k).

Supervised release is a "form of postconfinement monitoring overseen by the sentencing court." *Johnson v. United States*, 529 U.S. 694, 696-97 (2000). During a supervised-release period, defendants must follow certain conditions—for example, a rule against "commit[ting] another Federal, State, or local crime" and (typically) a requirement to submit to drug testing. 18 U.S.C. § 3583(d); *Esteras*, 606 U.S. at 192. And they often must appear for in-person meetings with employees of the judicial branch known as probation officers. *See* U.S.S.G. § 5D1.3(c)(1)-(2) (U.S. Sent'g Comm'n 2024).

Supervised release, then, "is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). It instead "fulfills rehabilitative ends" and "provides individuals with postconfinement assistance." *United States v. Johnson*, 529 U.S. 53, 59-60 (2000). When assessing supervised release, district courts may thus consider the "*forward-looking* ends of sentencing," like "deterrence, incapacitation, and rehabilitation." *Esteras*, 606 U.S. at 196.

More specifically, the supervised-release statute sets out the factors a district court should consider when determining "whether to include a term of supervised release" and "the length"

and "conditions" of that term. 18 U.S.C. § 3583(c). Those factors—including the need to provide a defendant "medical care" or "afford adequate deterrence to criminal conduct"—are drawn from 18 U.S.C. § 3553(a), the general sentencing statute. *See id.* § 3583(c) (directing consideration of factors "set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)"). Courts also have going-forward flexibility to modify the conditions or length of supervised release based upon a defendant's conduct while on supervision. *See id.* § 3583(e).

2

Roper's sole procedural-reasonableness argument is that "a defendant's mental illness cannot justify extending a criminal sentence." Roper Br. 18. As that phrasing suggests, Roper does not dispute that district courts may consider issues relating to a defendant's mental health when determining the length and conditions of supervised release. Nor could he, since the supervised-release statute directs district courts to weigh several considerations that may implicate a defendant's mental-health history or need for psychological treatment. 18 U.S.C. § 3583(c) (directing consideration of many of the § 3553(a) factors); *id.* § 3583(d) (authorizing district courts, through cross reference to 18 U.S.C. § 3563(b), to mandate "psychiatric" or "psychological treatment" in appropriate cases). Rather, Roper contends that any use of a defendant's mental illness at sentencing must be in the name of *mitigation*.

We reject Roper's ratchet-down-only view of district courts' sentencing discretion. To begin, Roper's position conflicts with the premise of procedural-reasonableness claims. Again, Roper agrees that the permissible supervised-release sentencing factors permit district courts to sometimes consider mental health—just so long as district courts ultimately vary any sentence downward. But if such consideration is on the table, then issues relating to mental illness are not "impermissible factors." *Rayyan*, 885 F.3d at 440. And if that's true, then district courts can use mental-illness issues to justify whatever "length" of supervision they find appropriate, 18 U.S.C. § 3583(c), so long as they comply with other procedural-reasonableness dictates (which aren't at issue here). *See United States v. James*, 792 F.3d 962, 968 (8th Cir. 2015) ("The district court adequately supported" a "lifetime term of supervised release" by "citing [the defendant's] mental health diagnoses.").

Nor does Roper point to anything in the statutory text or structure to support his contention that mental illness must play a supervision-shortening role. To the contrary, we've often recognized that § 3553(a) does not require district courts to treat mental illness as mitigating.[1] We've also held that a "district court may rely on a defendant's past conduct in determining [that] the appropriate sentence" warrants an "upward variance," even if "some of th[at] conduct may have stemmed, at least in part, from mental illness." *United States v. Adams*, 124 F.4th 432, 439 (6th Cir. 2024). So contra Roper, "the degree to which mental illness is deemed mitigating or aggravating, and the weight accorded that factor, lies within the sentencing judge's broad discretion." *United States v. Kluball*, 843 F.3d 716, 719 (7th Cir. 2016). Congress's choice to leave such matters to district courts' discretion stands in contrast to its exclusion of other factors from the supervised-release calculus. *See Esteras*, 606 U.S. at 193 (discussing exclusion of § 3553(a)(2)(A), (a)(3)). "[O]ur task is to give effect to, not nullify Congress'" structural choice, which further cuts against Roper. *Id.* at 196 (citation omitted).

Roper's response principally rests on *United States v. Moses*, 106 F.3d 1273 (6th Cir. 1997). There, we held that a district court erred by departing upwards from a Guidelines term of imprisonment based on concerns that the defendant's mental illness posed a danger to the public. *Id.* at 1275. *Moses*'s holding turned on the language of the particular departures the district court invoked and our conclusion that the civil-commitment statute, 18 U.S.C. § 4246, is the "appropriate mechanism" for incapacitating dangerous, mentally ill defendants, 106 F.3d at 1281.

*Moses* thus addressed only the scenario in which a district court departs upward to impose a lengthier term of imprisonment because of a "convicted person's mental illness." *Id.* at 1280. Yet Roper seeks to leverage *Moses* for a broader rule against district courts' *ever* relying on mental-health-related issues to impose a lengthier term of supervised release. Whatever the

---

[1]*United States v. Stamp*, 790 F. App'x 680, 684 (6th Cir. 2019); *United States v. Hunter*, 842 F. App'x 999, 1005-06 (6th Cir. 2021), *United States v. Tarazi*, 2021 WL 6101396, at *2 (6th Cir. Dec. 21, 2021); *United States v. Maxwell*, 483 F. App'x 233, 237 n.2 (6th Cir. 2012).

precise scope of *Moses*'s holding,**2** we disagree that its custody-centric rationale extends to the supervised-release context.

The rationale of *Moses* shows why. Defendants subject to imprisonment and civil commitment are maintained in federal custody. 18 U.S.C. § 3621(a) (imprisonment); *id.* § 4246(d) (civil commitment). So both imprisonment and civil commitment remove defendants from society. Yet civil commitment involves mental-health examinations and a clear-and-convincing showing of dangerousness. *Moses*, 106 F.3d at 1280-81. *Moses* thus centered on the concern that district courts faced with mentally ill defendants would use custodial prison sentences to circumvent the civil-commitment statute's unique guardrails. The same goes for *United States v. Pinson*, 542 F.3d 822 (10th Cir. 2008), which Roper also cites. Supervised release, though, is generally noncustodial. It "is a form of postconfinement monitoring that permits a defendant a kind of conditional liberty." *Esteras*, 606 U.S. at 192 (citation omitted). So it does not implicate *Moses*'s concerns about end-running the protections Congress has placed on civil commitment.

*Tapia v. United States*, 564 U.S. 319 (2011), does not cut against our conclusion either. In *Tapia*, the Supreme Court held that a district court "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." *Id.* at 335. That holding flowed from 18 U.S.C. § 3582(a), which directs district courts to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." *Tapia*, 564 U.S. at 326 (quoting 18 U.S.C. § 3582(a)). By contrast, all agree that "[s]upervised release fulfills rehabilitative ends." *Johnson*, 529 U.S. at 59. So *Tapia*'s term-of-imprisonment holding, like *Moses*'s, does not extend to supervised release.

---

**2**Panels have split over *Moses*'s scope as applied to sentences of imprisonment. *Compare United States v. Arnold*, 630 F. App'x 432, 438 (6th Cir. 2015) ("*Moses* prohibits the extension of a defendant's sentence based on the need for treatment for mental illness, even if that mental illness creates a potential danger of violent behavior."), *with Hunter*, 842 F. App'x at 1006 ("[T]hat blanket rule—though perhaps reasonable—is not *Moses*'s holding."), *and United States v. Storck*, 2024 WL 2217903, at *3 (6th Cir. May 16, 2024) ("*Moses* is inapplicable" when a defendant is "sentenced to an upward variance, not a departure."). Because we reject extending *Moses* to supervised release, we need not resolve that dispute here.

Roper last seeks to analogize his case to others where district courts advanced justifications that "are flatly prohibited by statute," "trample core constitutional protections," or "have no bearing on the goals set out in 18 U.S.C. § 3553(a)." Reply Br. 2. But he offers only one putative conflict—with 28 U.S.C. § 994(d)(4)—in passing. On its face, that provision is directed at the Sentencing Commission. *Id.* It does not limit district courts' sentencing discretion, so it is no help to Roper. If anything, it is Roper's position that creates statutory conflict. To name one: He does not explain how to reconcile his mitigation-only approach with 18 U.S.C. § 3661, which dictates that "[n]o limitation shall be placed on the information concerning" a defendant's "background, character, and conduct" that district courts "may receive and consider for the purpose of imposing an appropriate sentence."

Roper, in short, identifies no source of law that forbids district courts from considering issues relating to a defendant's mental health when imposing an above-Guidelines term of supervised release. Nor does Roper's view of "sound policy" license us to override the statutes that "Congress enacted" with atextual limits on district courts' sentencing discretion. *Soto v. United States*, 605 U.S. 360, 375 (2025). Because Roper does not assert procedural errors beyond his failed mitigation-only argument, his procedural-reasonableness challenge fails.

B

That leaves Roper's substantive-reasonableness challenge. Roper maintains that even if the district court could increase the term of supervised release based on his diagnosed history of mental illness, it placed too much weight on that factor. We again disagree.

Our review here is "highly deferential" because the district court's weighing of the § 3553(a) factors "is a matter of reasoned discretion, not math." *Rayyan*, 885 F.3d at 442. When, as here, a district court imposes an above-Guidelines sentence, we "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Mitchell*, 107 F.4th 534, 544 (6th Cir. 2024) (citation omitted). At the same time, though, we "must defer to the district court's sentence if it is justified by the relevant § 3553(a) factors, even if we would not have imposed the same sentence." *United States v. Zabel*, 35 F.4th 493, 510 (6th Cir. 2022). And "a district court does

not commit reversible error simply by attaching great weight to a few" of the § 3553(a) factors. *United States v. Robinson*, 892 F.3d 209, 214 (6th Cir. 2018) (cleaned up).

Judged against these standards, Roper's challenge fails.  To be sure, the district court noted that the imposed supervision term would allow Roper to obtain the "mental health help that [he] need[s]."  Sentencing Tr., R.53, PageID 918.  But contrary to Roper's assertions, the district court did not rest his term of supervised release solely on mental-illness considerations. It also considered Roper's "problems with authority," his "infractions" while on supervision for prior offenses, and his failure to acknowledge wrongdoing despite "numerous criminal offenses," among other factors.  *Id.* at PageID 919; *see supra* pp. 3-4.  Put simply, Roper's mental illness was one factor among many that weighed in the district court's decision to impose a 20-year term of supervision.  It did not impermissibly skew the sentence.

Moreover, the district court reasonably concluded that a substantial upward variance was warranted, as this case fell far outside the "heartland of average cases."  *Mitchell*, 107 F.4th at 545 (citation omitted).   That tracks Roper's own position that his mental-health issues differentiate him from the mine run of defendants.

Roper's attitude toward the law also makes him an outlier.  His "16 criminal history points" easily placed him in the most severe criminal-history category.  Sentencing Tr., R.53, PageID 927.  And Roper incurred those points for crimes of "violence[,] as well as failure to register" and attempted "lewdness with a child under the age of 14."  *Id.*  Despite that background, Roper previously stated that "he didn't do anything wrong."  *Id.*  He also demonstrated "continued noncompliance with his registration requirements" and incurred numerous "infractions" while in prison.  *Id.* at PageID 912, 926-27.  In the district court's view, Roper thus lacked "self awareness" and "pose[d] a risk to the public," which "warrant[ed] a longer period of supervision."  *Id.* at PageID 919, 927.  The district court's concerns about Roper's need for treatment, "poor . . . adjustment" to rules in prison and while on supervision, deterrence, and public safety are "compelling" justifications for a longer supervised-release term. *Mitchell*, 107 F.4th at 544-45 (citation omitted).

As a final note, at the time of Roper's sentence, the Guidelines recommended the statutory minimum—five years of supervised release—for *every* defendant convicted of a failure-to-register offense, no matter his criminal history. *See* U.S.S.G. § 5D1.2(a), (c), cmt. n.6 (U.S. Sent'g Comm'n 2024); 18 U.S.C. § 3583(k). A first-time offender, therefore, would have received the same recommended term of supervision as Roper. But as the district court's explanation recognized, Roper's "penchant" for failing to register and committing other legal violations is "uniquely problematic." *United States v. Lee*, 974 F.3d 670, 677-78 (6th Cir. 2020) (citation omitted). The district court's decision to vary upward from the Guidelines range—and in turn account for Roper's distinct background—is consistent with our caselaw. *Id.* at 678.

In short, the district court's justification "is sufficiently compelling to support the degree of the variance." *Mitchell*, 107 F.4th at 544 (citation omitted). It balanced the relevant § 3553(a) factors and imposed a "stiff, but reasonable through it all," term of supervised release in light of the challenges and risks Roper's uniquely troubled background presented. *Rayyan*, 885 F.3d at 442-43. The term of supervised release, though lengthy, is far below the maximum permitted. *See* 18 U.S.C. § 3583(k). The district court did not abuse its discretion in concluding that the term of supervision would benefit Roper—by providing him structured oversight and access to medical treatment—and the public—by mitigating the risk that Roper would commit further crimes if supervised for only the minimum statutory period.

Roper's substantive-reasonableness argument "ultimately boils down to an assertion that the district court should have balanced the § 3553(a) factors differently." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008). Such an assertion is "simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *Id.* (citation omitted).

\*     \*     \*

We affirm the judgment of the district court.